# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **JOEL VANGHELUWE, ET AL.,** | Case No. 2:18-cv-10542-LJM-EAS |
| Plaintiffs, | Hon. Laurie J. Michelson |
| v. | Mag. Elizabeth A. Stafford |
| **GOTNEWS, LLC, ET AL.,** | |
| Defendants. | |

| | |
|---|---|
| **KIRK, HUTH, LANGE & BADALAMENTI, PLC**<br>Elizabeth P. Roberts (P76017)<br>Raechel M. Badalamenti (P64361)<br>19500 Hall Rd., Ste. 100<br>Clinton Twp., MI 48038<br>(T): (586) 412-4900<br>(F): (586) 412-4949<br>(E): eroberts@khlblaw.com<br>(E): rbadalamenti@khlblaw.com<br>*Attorneys for Jerome Vangheluwe and Joel Vangheluwe* | **BRISTOW LAW, PLLC**<br>By: Kyle J. Bristow (P77200)<br>P.O. Box 381164<br>Clinton Twp., MI 48038<br>(T): (248) 838-9934<br>(F): (586) 408-6384<br>(E): BristowLaw@gmail.com<br>*Attorney for Paul Nehlen* |
| **SOMMERMAN, McCAFFITY & QUESADA, L.L.P.**<br>Andrew B. Sommerman<br>3811 Turtle Creek Blvd., Ste. 1400<br>Dallas, TX 75219<br>(T): (214) 720-0720<br>(F): (214) 720-0184<br>(E): andrew@textrial.com<br>*Attorneys for Jerome Vangheluwe and Joel Vangheluwe* | **KELLEY & EVANCHEK PC**<br>John A. Evanchek (P66157)<br>43695 Michigan Ave.<br>Canton, MI 48188<br>(T): (734) 397-4540<br>(F): (734) 397-4567<br>(E): john@kelawpc.com<br>*Attorney for Richard Weikart* |

## DEFENDANT PAUL NEHLEN'S THIRD MOTION FOR DISMISSAL PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(6) (ORAL ARGUMENT REQUESTED)

NOW COMES Defendant Paul Nehlen ("Nehlen"), by and through Attorney Kyle J. Bristow of Bristow Law, PLLC, and hereby propounds upon the Parties of the instant civil action and this Honorable Court Defendant Paul Nehlen's Third Motion[1] for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6):

1.   Pursuant to LR 7.1(a)(2)(B), despite reasonable efforts having been made, the movant was unable to conduct a conference to obtain concurrence for the relief sought; to wit: the undersigned attorney sent an electronic mail to the attorneys of record for the plaintiffs on Friday, April 20, 2018, and requested a response back—which was not provided as of the date and time the Instant Motion was electronically filed with the Court. Furthermore, during the morning of April 23, 2018, the undersigned attorney attempted to call Attorneys Elizabeth Roberts and Raechel Badalamenti to seek concurrence for the relief sought herein, but the secretary relayed that they were not at their office and that she did not know when they would return. In fact, Attorneys Elizabeth Roberts and Raechel Badalamenti have never communicated with the undersigned attorney.

2.   The Court lacks personal jurisdiction over Nehlen, and the case should be dismissed against Nehlen in accordance with Fed. R. Civ. P. 12(b)(2) for the reason set forth in the attached Brief.

3.   Assuming, *arguendo*, the Court enjoys personal jurisdiction over Nehlen, the case against Nehlen should still be dismissed in accordance with Fed. R. Civ. P. 12(b)(6) for the reasons set forth in the attached Brief.

---

[1] Plaintiffs Complaint is Dckt #1, Nehlen's First Motion to Dismiss is Dckt #6, Plaintiffs' First Amended Complaint is Dckt #10, Nehlen's Second Motion to Dismiss is Dckt #11, the Court struck, *sua sponte*, Plaintiffs' First Amended Complaint on May 4, 2018, Plaintiffs filed Plaintiffs' Amended Complaint as Dckt #12, and now Nehlen again files Nehlen's Motion to Dismiss for *pro forma* purposes so as to make sure Nehlen's Fed. R. Civ. P. 12b defenses are properly before the Court.

WHEREFORE, Nehlen prays that this Honorable Court will dismiss the instant civil action against Nehlen.

Respectfully submitted,

**BRISTOW LAW, PLLC**


/s/ Kyle J. Bristow_____
Kyle J. Bristow (P77200)
P.O. Box 381164
Clinton Twp., MI 48038
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  BristowLaw@gmail.com
*Attorney for Paul Nehlen*

Dated:  May 4, 2018

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **JOEL VANGHELUWE, ET AL.,** | Case No. 2:18-cv-10542-LJM-EAS |
| Plaintiffs, | Hon. Laurie J. Michelson |
| v. | Mag. Elizabeth A. Stafford |
| **GOTNEWS, LLC, ET AL.,** | |
| Defendants. | |

**KIRK, HUTH, LANGE & BADALAMENTI, PLC**
Elizabeth P. Roberts (P76017)
Raechel M. Badalamenti (P64361)
19500 Hall Rd., Ste. 100
Clinton Twp., MI 48038
(T):  (586) 412-4900
(F):  (586) 412-4949
(E):  eroberts@khlblaw.com
(E):  rbadalamenti@khlblaw.com
*Attorneys for Jerome Vangheluwe and Joel Vangheluwe*

**BRISTOW LAW, PLLC**
By:  Kyle J. Bristow (P77200)
P.O. Box 381164
Clinton Twp., MI 48038
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  BristowLaw@gmail.com
*Attorney for Paul Nehlen*

**SOMMERMAN, McCAFFITY & QUESADA, L.L.P.**
Andrew B. Sommerman
3811 Turtle Creek Blvd., Ste. 1400
Dallas, TX 75219
(T):  (214) 720-0720
(F):  (214) 720-0184
(E):  andrew@textrial.com
*Attorneys for Jerome Vangheluwe and Joel Vangheluwe*

**KELLEY & EVANCHEK PC**
John A. Evanchek (P66157)
43695 Michigan Ave.
Canton, MI 48188
(T):  (734) 397-4540
(F):  (734) 397-4567
(E):  john@kelawpc.com
*Attorney for Richard Weikart*

**DEFENDANT PAUL NEHLEN'S BRIEF IN SUPPORT OF HIS THIRD MOTION FOR DISMISSAL PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(6)**

**TABLE OF CONTENTS**

I. CONCISE STATEMENT OF ISSUES PRESENTED .......................................................... 2

II. CONTROLLING LEGAL AUTHORITIES ................................................................... 3

III. INDEX OF AUTHORITIES .......................................................................................... 4

IV. STATEMENT OF RELEVANT FACTS ....................................................................... 6

V. LAW & ARGUMENT ................................................................................................... 7

    A. PLAINTIFFS' CLAIMS AGAINST NEHLEN MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(2) ..................................................................7

        1. STANDARD OF REVIEW ...................................................................... 7

        2. PRINCIPAL POINT OF ARGUMENT ................................................... 8

        3. CONCLUSION ........................................................................................ 12

    B. PLAINTIFFS' CLAIMS AGAINST NEHLEN MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6) ..................................................................12

        1. STANDARD OF REVIEW ...................................................................... 12

        2. PRINCIPAL POINT OF ARGUMENT ................................................... 13

        3. CONCLUSION ........................................................................................ 18

VI. CONCLUSION .............................................................................................................. 20

1

## I.  CONCISE STATEMENT OF ISSUES PRESENTED

1. Whether the Court should dismiss the instant civil action against Defendant Paul Nehlen ("Nehlen") pursuant to Fed. R. Civ. P. 12(b)(2) on the basis that the Court lacks personal jurisdiction over him.

    Plaintiffs' Anticipated Response:  "No."

    Nehlen's Response:  "Yes."

2. Whether the Court should dismiss the instant civil action against Nehlen pursuant to Fed. R. Civ. P. 12(b)(6) on the basis that Plaintiffs Jerome Vangheluwe ("Jerome") and Joel Vangheluwe ("Joel") (Jerome and Joel collectively "Plaintiffs") have failed to state a claim against Nehlen upon which relief can be granted.

    Plaintiffs' Anticipated Response:  "No."

    Nehlen's Response:  "Yes."

2

## II.  CONTROLLING LEGAL AUTHORITIES

**CASE LAW**

*Binion v. O'Neal*, 95 F.Supp.3d 1055 (E.D. Mich. 2015)..........................................7, 8, 11

*Jones v. Dirty World Entertainment Recordings, LLC*, 775 F.3d 398 (6th Cir. 2014)...................................................................................................................15-17

*O'Kroley v. Fastcase, Inc.*, 831 F.3d 352 (6th Cir. 2016) ..................................................14

**STATUTORY LAW**

47 U.S.C. § 230 ....................................................................................................13-15

**CONSTITUTIONAL LAW**

None

**COURT RULES**

Fed. R. Civ. P. 12(b)(2).......................................................................................7, 8, 12, 19

Fed. R. Civ. P. 12(b)(6).......................................................................................7, 12, 18-19

## III. INDEX OF AUTHORITIES

**CASE LAW**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................12

*Bell A. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................12

*Binion v. O'Neal*, 95 F.Supp.3d 1055 (E.D. Mich. 2015) ........................7, 8, 11

*Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472 (6th Cir. 2003) ................8

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ................................................9

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)............................9

*Dannis v. C&G Publ'g, Inc* 187 Mich.App. 691, 468 N.W.2d 331 (1991).....................17

*Dean v. Motel 6 Operating, L.P.*, 134 F.3d 1269 (6th Cir. 1998)........................7

*Directory Assistants v. SuperMedia*, LLC, 884 F.Supp.2d 446 (E.D. Va. 2012) ..............15

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)...........................................17

*Howe v. Detroit Free Press*, 219 Mich.App. 150, 555 N.W.2d 738 (1996), *aff'd*, 457 Mich. 871, 586 N.W.2d 85 (1998).........................................................17

*Hyperbaric Options, LLC v. Oxy-Health, LLC*, No. 12-12020, 2013 WL 5449959 (E.D. Mich. 2013) ..................................................................10

*Intera Corp. v. Henderson*, 428 F.3d 605 (6th Cir. 2005) ..................................9

*J. McIntyre Mach., Ltd. v. Nicastro*, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011)..................9

*Jones v. Dirty World Entertainment Recordings, LLC*, 775 F.3d 398 (6th Cir. 2014)..............................................................................15-17

*Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008)............................................12

*Lifestyle Lift Holding Co. v. Prendiville*, 768 F.Supp.2d 929 (E.D. Mich. 2011)..........9-10

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002).................7-9, 11

*O'Kroley v. Fastcase, Inc.*, 831 F.3d 352 (6th Cir. 2016) ...................................14

*Orr v. Argus-Press Co.*, 586 F.2d 1108 (6th Cir. 1978) .................................6, 17

*Parisi v. Sinclair*, 774 F.Supp.2d 310 (D.D.C. 2011)........................................................16

*Roca Labs, Inc., v. Consumer Opinion Corp.*, 140 F.Supp.3d 1311 (M.D. Fla. 2015)......................................................................................................................14-15

*So. Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968) ...................9

*Time, Inc., v. Pape*, 401 U.S. 279 (1971)..........................................................................17

*Thomas v. Barrett*, No. 1:12-CV-00074, 2012 WL 2952188 (W.D. Mich. 2012) ...........10

*Weather Underground, Inc. v. Navigation Catalyst Sys., Inc.*, 688 F.Supp.2d 693 (E.D. Mich. 2009) .........................................................................................................10

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997) ..............9-11

## STATUTORY LAW

M.C.L. § 600.705 ..................................................................................................................8

M.C.L. § 600.711 ..................................................................................................................8

47 U.S.C. § 230 .............................................................................................................13-15

47 U.S.C. § 230(c)(1) ....................................................................................................13-15

47 U.S.C. § 230(f)(2) .........................................................................................................13

47 U.S.C. § 230(f)(3) .........................................................................................................14

## CONSTITUTIONAL LAW

None

## COURT RULES

Fed. R. Civ. P. 12(b)(2)..........................................................................................7, 8, 12, 19

Fed. R. Civ. P. 12(b)(6)..........................................................................................7, 12, 18-19

Fed. R. Civ. P. 12(g)(1)........................................................................................................7

5

## IV.  STATEMENT OF RELEVANT FACTS

Plaintiffs are a father and son who were accused of misconduct in an article that was written and published on the World Wide Web by Defendant GotNews, LLC ("GotNews").  (Plaintiffs' First Amended Complaint, Dckt #12, ¶¶ 1 and 6, Ex A).  Jerome previously legally owned the vehicle that was used to "murder" Heather Heyer during the "Unite the Right" rally which occurred in Charlottesville, Virginia, on August 12, 2017.  (Plaintiffs' First Amended Complaint, Dckt #12, ¶¶ 3, 8).  GotNews incorrectly alleged in the article at issue in the instant controversy that Jerome still owned the vehicle and that Joel was the perpetrator of the attack.  (Plaintiffs' First Amended Complaint, Dckt #12, ¶ 8).

The article published by GotNews resulted in death threats being made against Plaintiffs by unknown third-parties.  (Plaintiffs' First Amended Complaint, Dckt #12, ¶ 10).

Plaintiffs are residents of the State of Michigan.  (Plaintiffs' First Amended Complaint, Dckt #12, ¶¶ 11-12).  Nehlen is a resident of the State of Wisconsin and is currently seeking office to be a congressman.  (Plaintiffs' First Amended Complaint, Dckt #12, ¶ 34, 39).

Plaintiffs sued Nehlen for a posting that Nehlen published on Nehlen's online Twitter profile on August 12, 2017, in which Nehlen provided readers a hyperlink to the GotNews article and stated, "BREAKING: #Charlottesville Car Terrorist Is Anti-Trump, Open Borders Druggie." (Plaintiffs' First Amended Complaint, Dckt #12, ¶¶ 34, 39-41, 106, Ex T).

The United States District Court for the Eastern District of Michigan previously articulated how Twitter works:

> Twitter is a social media website that allows users to post "Tweets," which are described as "an expression of a moment or idea.  It can contain text, photos, and videos.  Millions of Tweets are shared in real time, every day." (*The Story of a Tweet:  What Is a Tweet*, Twitter.com, https://about.twitter.com/what-is-twitter/story-of-a-tweet (last visited March 12, 2015)). * * * Twitter allows users to "share photos, in real time, with everyone or with the people [they] choose." (*So*

> *Much More than Words*, Twitter.com, https://about.twitter.com/products/photo-sharing (last visited March 12, 2015)). Twitter users can also "follow" other users, so that others' Tweets will appear in the user's Twitter feed. Finally, Twitter allows users to re-post or "Retweet" content from other users' Twitter feeds to be shared with their own followers. (*The Story of a Tweet: What Is a Tweet*, Twitter.com, https://about.twitter.com/what-is-twitter/story-of-a-tweet (last visited March 12, 2015)).

*Binion v. O'Neal*, 95 F.Supp.3d 1055 (E.D. Mich. 2015).

Plaintiffs' Complaint is devoid of any averments of fact demonstrating that Nehlen purposefully directed his conduct towards the State of Michigan in relation to the misconduct at issue to such an extent that personal jurisdiction over him is proper here or that Nehlen even published a statement[2] about Plaintiffs which is in and of itself actionable. (Plaintiffs' First Amended Complaint, Dckt #12). Nehlen did nothing wrong!

## V.  LAW & ARGUMENT

A motion to dismiss per Fed. R. Civ. P. 12(b)(2) may be joined by a motion to dismiss per Fed. R. Civ. P. 12(b)(6). Fed. R. Civ. P. 12(g)(1).

### A.  PLAINTIFFS' CLAIMS AGAINST NEHLEN MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(2)

#### 1.  STANDARD OF REVIEW

As was succinctly articulated in *Binion* concerning the standard of review for a motion to dismiss made per Fed. R. Civ. P. 12(b)(2) in the context of Twitter disparagement:

> A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) tests the court's personal jurisdiction over the defendant. The plaintiff bears the burden of

---

[2] Plaintiffs allege that Nehlen "incorporated by reference" the statements made in the GotNews article by merely providing people a hyperlink to the same. (Plaintiffs' First Amended Complaint, Dckt #10, ¶ 106). 4,500 people re-Tweeted (a/k/a re-published) Nehlen's Tweet, and if Plaintiffs' theory that merely publishing a hyperlink to a third-party's website constitutes a statement of fact in and of itself, then Plaintiffs could conceivably sue every single one of these 4,500 people who did so. (Plaintiffs' First Amended Complaint, Dckt #10, Ex T). Plaintiffs' theory of liability being imposed for what a third-party publishes that is suggested to be viewed by a purported tortfeasor is inapposite to the Communications Decency Act and common sense.

establishing that personal jurisdiction exists. *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 887 (6th Cir. 2002). The Sixth Circuit has clearly outlined the procedure for determining personal jurisdiction in Fed.R.Civ.P. 12(b)(2) challenges. *Dean v. Motel 6 Operating, L.P*., 134 F.3d 1269, 1271-72 (6th Cir. 1998). When considering a motion under Rule 12(b)(2), a court has three choices: (1) rule on the motion based on the affidavits submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *See Dean*, 134 F.3d at 1272. When a court rules on a 12(b)(2) motion to dismiss without an evidentiary hearing, the complaint and affidavits are considered in a light most favorable to the plaintiff. *Id*.

*Binion*, 95 F.Supp.3d at 1058.

## 2. PRINCIPAL POINT OF ARGUMENT

The Court does not enjoy personal jurisdiction over Nehlen, and if there is one legal authority the Court should review in relation to this argument it is *Binion v. O'Neal*, 95 F.Supp.3d 1055 (E.D. Mich. 2015), because it contains a virtually identical fact pattern as the case at bar.

In *Binion*, former basketball star Shaquille O'Neal ("O'Neal")—a resident of Florida and Massachusetts—was sued by the plaintiff—a resident of Michigan—for mocking the plaintiff's physical deformities on O'Neal's Twitter page. *Binion*, 95 F.Supp.3d at 1057-1058. O'Neal's Twitter profile had 8.46 million followers at the time of the Tweeting. *Id.* at 1058.

O'Neal moved for dismissal of the civil action on the basis that the court lacked personal jurisdiction over him, which was not surprisingly granted by the court. *Id*. at 1061.

The *Binion* court succinctly provided an overview of how personal jurisdiction works for Internet-related tort cases involving social media and Michigan's long-arm statute:

"A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp*., 282 F.3d at 888 (citation omitted). In this case, Plaintiff is not invoking general jurisdiction under Michigan's general jurisdiction statute, M.C.L. § 600.711, but limited jurisdiction under Michigan's "Long Arm" statute, M.C.L. § 600.705. Michigan's limited jurisdiction provisions permit the exercise of jurisdiction to the extent limited by due process requirements; thus, "[w]here the state long-arm statute extends to the limits of the due process clause, the two

8

inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Bridgeport Music, Inc. v. Still N the Water Pub*., 327 F.3d 472, 477 (6th Cir. 2003).

The court's jurisdiction comports with due process "when defendant has sufficient minimum contacts such that traditional notions of fair play and substantial justice are not offended." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). The Sixth Circuit uses a three-part test in determining whether, consistent with due process, a court may exercise limited personal jurisdiction: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence to occur there; (2) the cause of action must arise from the defendant's activities in the forum state; and (3) the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over him reasonable. *So. Machine Co. v. Mohasco Industries, Inc*., 401 F.2d 374, 381 (6th Cir. 1968). There is an inference that the exercise of jurisdiction is reasonable where the first two elements have been satisfied. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).

To establish purposeful availment, the defendant must perform some act whereby the defendant purposefully avails himself of the privilege of doing business in the forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). There must be a substantial connection between the defendant's conduct and the state such that the defendant "should reasonably anticipate being hauled into court there." *Id*. at 474. As the Supreme Court recently stated, "[t]he principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S.Ct. 2780, 2783, 180 L.Ed.2d 765 (2011).

In a tort case related to defamatory content posted on an internet website, courts in the Sixth Circuit have used two different tests to determine if purposeful availment has been established. First, the "Zippo test" considers how interactive the website is with the people in the forum state. See *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F.Supp. 1119, 1124 (W.D. Pa. 1997). Second, the "Calder test" considers whether the "effects" of the defendant's intentional tortious conduct, which the defendant could expect to be felt in the forum state, was sufficient for the forum's courts to exercise jurisdiction over him. *Lifestyle Lift Holding Co. v. Prendiville*, 768 F.Supp.2d 929, 937 (E.D. Mich. 2011).

A. The Zippo Test

Under the Zippo test, "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp*., 282 F.3d at 890.

9

On one end of the spectrum are situations where a defendant clearly does business over the internet (i.e., enters into contracts with residents of forum state that involve the knowing and repeated transmission of computer files over internet).  Under these circumstances, jurisdiction is proper.  At the other end of the spectrum are those situations where the defendant simply posted information on a web site that is accessible to users in the forum state.  However, such passive web sites are not grounds for jurisdiction.  In the middle are those web sites that permit a user to exchange information with the host computer.  In these situations, a court must consider the level of interactivity and the commercial nature of the information exchange.  *Hyperbaric Options, LLC v. Oxy-Health, LLC*, No. 12-12020, 2013 WL 5449959, at *5 (E.D. Mich. Sept. 30, 2013) (citing *Zippo*, 952 F.Supp. at 1124).

Courts in this Circuit have held that social media websites "do not lend themselves" to the Zippo test because the defendants do not own or operate the websites, but is merely a visitor or an account holder; in addition, the websites are generally not used primarily to conduct business. See, e.g., *Hyperbaric Options*, 2013 WL 5449959, at *6.  Other courts have applied the Zippo test to social media websites and held that personal jurisdiction is not established by merely posting content on websites such as Facebook: although "slightly more interactive" because of the ability to "like," share, or comment on postings, the site "lack[s] a commercial nature, and additional interactivity [is] absent."  *Thomas v. Barrett*, No. 1:12-CV-00074, 2012 WL 2952188, at *4 (W.D. Mich. July 19, 2012).

A similar result is necessary here.  Although highly offensive, O'Neal's posts on Instagram and Twitter were little more than the posting of information on social media websites, which became accessible to users in Michigan and elsewhere.  The websites are not owned or operated by O'Neal, were minimally interactive, and the postings were not intended to conduct business.

B. The Calder "Effects" Test

Under the Calder "effects" test, a plaintiff must establish "(1) the defendant intentionally committed a tortious action which was expressly aimed for dissemination in the forum state, and (2) the brunt of the effects of the actions are felt within the forum state."  *Hyperbaric Options*, 2013 WL 5449959, at *6 (citing Lifestyle Lift Holding Co., 768 F.Supp.2d at 937).  However, "injury to a forum resident is not enough, and the Calder test has not been read to authorize personal jurisdiction in a plaintiff's home forum in the absence of 'something more' to demonstrate that the defendant directed this activity toward the forum state."  (citing *Weather Underground, Inc. v. Navigation Catalyst Sys., Inc*., 688 F.Supp.2d 693, 700 (E.D. Mich. 2009)).

Here, Plaintiff cannot establish that O'Neal's posts were "expressly aimed for dissemination" in Michigan.  Nor is there any allegation that O'Neal took affirmative steps to direct the posts to a Michigan audience.  Instead, O'Neal's posts were meant for a national or even international audience.  Here, the only connection

to Michigan is Plaintiff's injury.  This, without "something more" is insufficient to establish personal jurisdiction over O'Neal under the "effects" test.

*Id.* at 1059-1060.

Plaintiffs bear the burden of showing in Plaintiffs' Complaint or in exhibits attached to Plaintiffs' forthcoming response to Nehlen's instant Motion that the Court enjoys personal jurisdiction over him.  *Neogen Corp.*, 282 F.3d at 887.  When the Court analyzes the alleged facts of the instant case with the applicable law, it is clear that the Court lacks personal jurisdiction over Nehlen by both the *Zippo* test and the *Calder* test.

Like O'Neal's posts on Twitter, Nehlen's Tweet was—to borrow the language from *Binion*—"little more than the posting of information on social media websites, which became accessible to users in Michigan and elsewhere.  The websites are not owned or operated by [Nehlen], were minimally interactive, and the postings were not intended to conduct business." *Binion*, 95 F.Supp.3d at 1060.  Thus, the Court does not enjoy personal jurisdiction over Nehlen per the *Zippo* test.

Plaintiffs' Complaint alleges that the Court enjoys personal jurisdiction over Nehlen per the *Calder* test, but Plaintiffs' Complaint makes this allegation in a conclusory manner without any averments of fact in support thereof which links Nehlen's purported misconduct to the State of Michigan.  (Plaintiffs' First Amended Complaint, Dckt #12, ¶ 35).

Like O'Neal's posts on Twitter, Nehlen's Tweet was not "'expressly aimed for dissemination' in Michigan."  *Id*.  Just like in *Binion*—again parroting the language of that court—, Plaintiffs' Complaint is devoid of any allegation that Nehlen, as a defendant, "took affirmative steps to direct the posts to a Michigan audience.  Instead, [Nehlen]'s posts were meant for a national or even international audience.  Here, the only connection to Michigan is [Plaintiffs']

11

injury. This, without 'something more' is insufficient to establish personal jurisdiction over [Nehlen] under the 'effects' test." *Id*.

Although Plaintiffs feelings were hurt in Michigan, Nehlen's right to due process and to not be haled into a court that lacks personal jurisdiction over him is the Court's paramount concern.

### 3. CONCLUSION

For the reasons set forth herein, the Court does not enjoy personal jurisdiction over Nehlen and Nehlen is entitled to the dismissal of the instant civil action as it relates to him pursuant to Fed. R. Civ. P. 12(b)(2).

### B. PLAINTIFFS' CLAIMS AGAINST NEHLEN MUST BE DISMISSED PURSUANT TO FED. CIV. P. 12(B)(6)

### 1. STANDARD OF REVIEW

When deciding a motion to dismiss per Fed. R. Civ. P. 12(b)(6), a court must construe the plaintiff's complaint in the light most favorable to the plaintiff and must accept all the factual allegations contained in the complaint as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

In order to survive a motion to dismiss per Fed. R. Civ. P. 12(b)(6), the plaintiff's complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell A. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief will * * * be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## 2.  PRINCIPAL POINT OF ARGUMENT

When the Court carefully scrutinizes Nehlen's Tweet and takes into consideration the nuances of how Twitter works and elementary rules concerning Internet-related tort law, it is clear that Nehlen did not do anything that is actionable.

Plaintiffs are suing Nehlen for defamation, intentional infliction of emotional distress, and invasion of privacy.  (Plaintiffs' First Amended Complaint, Dckt #12, ¶¶ 111-140).  All Nehlen did, however, was provide a hyperlink to the GotNews article on Nehlen's Twitter page.  (Plaintiffs' First Amended Complaint, Dckt #12, ¶ 106, Ex T).  Nehlen did not himself state anything about Plaintiffs but instead simply directed people to consider what GotNews wrote about Plaintiffs.  There is no liability for doing this.

Imagine, for example, instead of the controversy playing out on the World Wide Web it occurred at a street corner with two actors:  the tortfeasor engaged in defamatory speech (i.e., GotNews) and a person who heard what the tortfeasor says (i.e., Nehlen) and who exclaims to third-parties walking by, "Holy cow!  Did you hear what that guy over there just said about his victim?  You should listen to him."  Common sense dictates that the individual who originally published the defamatory content is solely liable for the same and that third-parties are not liable simply for drawing the attention of others to it.  Nehlen did not himself publish anything actionable about Plaintiffs; rather, Nehlen simply directed third-parties to consider what was published by GotNews on its website about Plaintiffs.

In the context of Internet law and the instant controversy, the Communications Decency Act, 47 U.S.C. § 230 (the "CDA"), shields Nehlen from liability for what was published by GotNews.  The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content

provider."  47 U.S.C. § 230(c)(1).  The term "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet[.]"  47 U.S.C. § 230(f)(2).  The term "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3).

In the instant case, GotNews is clearly the "information content provider" which published the article at issue in the instant controversy.  (Plaintiffs' First Amended Complaint, Dckt #12, ¶ 6, Ex A).  Nehlen's Twitter profile—@pnehlen—is "an interactive computer service" which merely encouraged third-parties to read the GotNews article when Nehlen Tweeted a hyperlink to the same.  (Plaintiffs' First Amended Complaint, Dckt #12, ¶ 34).  Pursuant to 47 U.S.C. § 230(c)(1), Nehlen is not civilly liable for the content that was provided by GotNews.  There is simply no such thing as "incorporating" a statement and becoming civilly liable for it due to the CDA, which is, in essence, the entirety of Plaintiffs' claims against Nehlen.  (Plaintiffs' FIrst Amended Complaint, Dckt #12, ¶ 106).

In *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352 (6th Cir. 2016), the plaintiff sued Google, Inc., and a number of other entities for publishing hyperlinks to derogatory content that has been published on the World Wide Web by third-parties.  The *O'Kroley* court held that the CDA afforded Google, Inc., immunity from state and federal tort law—despite publishing hyperlinks to derogatory content in its search engine results—because a separate "entity [was] responsible * * * for the [content's] creation."  *O'Kroley*, 831 F.3d at 355 (citing 47 U.S.C. § 230(f)(3)).

In the instant case, Nehlen did nothing more than what Google, Inc., did in the O'*Kroley* case: both defendants published hyperlinks to content written by third-parties. The case against Google, Inc., was dismissed, and the case against Nehlen should be dismissed.

In *Roca Labs, Inc., v. Consumer Opinion Corp.*, 140 F.Supp.3d 1311 (M.D. Fla. 2015), the federal court ruled in pertinent part that publishing a hyperlink to a website on Twitter is privileged by right pursuant to the CDA. Said *Roca Labs*, "Distributing a link via Twitter is materially indistinguishable from forwarding a link via email in that both methods do not substantively alter the content of the posts. Thus, as in [*Directory Assistants v. SuperMedia*, *LLC*, 884 F.Supp.2d 446 (E.D. Va. 2012)], Section 230 immunity applies." *Roca Labs*, 140 F.Supp.3d at 1321.

Although Nehlen offered *de minimis* commentary about the article in his Tweet— ("BREAKING: #Charlottesville Car Terrorist Is Anti-Trump, Open Borders Druggie.") (Plaintiffs' First Amended Complaint, Dckt #12, ¶ 106, Ex T)—, this is not sufficient for Nehlen to be deemed a co-creator of the original derogatory content published by GotNews which has understandably plagued Plaintiffs. As was noted by *Roca Labs*, the CDA immunity applies if the source of the information is derived from a third-party, much less the statement at issue itself. *Id.* at 1322 and 1323. In this case, the source of Nehlen's opinion comes solely from the GotNews website.

In *Jones v. Dirty World Entertainment Recordings, LLC*, 775 F.3d 398 (6th Cir. 2014), the Sixth Circuit dealt with a case in which defamatory posts were published on a trash-gossip website accessible at www.TheDirty.com. Said the *Jones* court of the fact pattern of that case:

> Jones was found to be the object of defamatory content published on a user-generated, online tabloid; however, the judgment in her favor cannot stand. Under the CDA, Richie and Dirty World were neither the creators nor the developers of the challenged defamatory content that was published on the website. Jones's tort claims are grounded on the statements of another content provider yet seek to impose liability on Dirty World and Richie as if they were the publishers or

15

speakers of those statements. Section 230(c)(1) therefore bars Jones's claims. Accordingly, we vacate the judgment in favor of Jones and reverse the district court's denial of Dirty World's and Richie's motion for judgment as a matter of law with instructions to enter judgment as a matter of law in their favor.

*Jones*, 775 F.3d at 402.

In *Jones*, a third-party information content provider wrote the derogatory material and the defendant—the user of a website service provider—thereafter offered commentary about the same:

> First, on October 27, 2009, a visitor to www.TheDirty.com submitted two photographs of Jones and a male companion and the following post:
>
> > THE DIRTY ARMY:  Nik, this is Sara J, Cincinnati Bengal Cheerleader. She's been spotted around town lately with the infamous Shayne Graham. She has also slept with every other Bengal Football player. This girl is a teacher too!! You would think with Graham's paycheck he could attract something a little easier on the eyes Nik!
>
> Appearing directly beneath this post, Richie added:
>
> > Everyone in Cincinnati knows this kicker is a Sex Addict. It is no secret... he can't even keep relationships because his Red Rocket has freckles that need to be touched constantly. – nik

*Id.* at 403.

Following the publishing of the above-mentioned derogatory content by a third-party user and the commentary by www.TheDirty.com website proprietor Hooman Karamian (a/k/a Nik Richie) ("Karamian"), a different third-party information content provider published additional derogatory content to which Karamian published additional derogatory commentary. *Id.* at 404. The Sixth Circuit deemed this derogatory editorializing by Karamian as being privileged by right per the CDA since the source of the originally actionable information came from someone other than Karamian:

> The district court also suggested that when an interactive computer service provider adds commentary to third-party content that "ratifies or adopts" that content, then the provider becomes a "creator" or "developer" of that content and is not entitled to the CDA's protection. *Jones IV*, 965 F.Supp.3d at 821, *see also id.* at 823 ("Thus,

16

Richie's conduct cannot be said to have been 'neutral with respect to the offensiveness of the content,' such that he is not 'responsible' for it within the meaning of 47 U.S.C. § 250(f)(3).").  An adoption or ratification theory, however, is not only inconsistent with the material contribution standard of "development" but also abuses the concept of responsibility.  A website operator cannot be responsible for what makes another party's statement actionable by commenting on that statement *post hoc*.  To be sure, a website operator's previous comments on prior postings could encourage subsequent invidious postings, but that loose understanding of responsibility collapses into the encouragement measure of "development," which we reject. *See, e.g., Roommates*, 521 F.3d at 1174; *Batzel*, 333 F.3d at 1031.  As other courts have recognized, the adoption theory of "development" would undermine the CDA for the same reasons as an encouragement theory. *See Parisi v. Sinclair*, 774 F.Supp.2d 310, 316 (D.D.C. 2011) (dismissing plaintiffs' claims as barred by the CDA despite their argument that defendant "adopted" the statements at issue as its own and finding that "it would be contrary to the purpose of the CDA, which sought to encourage the vibrant and competitive free market of ideas on the Internet, by establishing immunity for internet publication of third-party content to require a fact-based analysis of it and when a defendant adopted particular statements and revoke immunity on that basis" (internal citations and quotation marks omitted)).

We now apply the material contribution measure of "development" to the facts of this case.  Jones's defamation claims target the statements that were posted by a third party on October 27 and December 7, 2009.  Because Dirty World and Richie did not materially contribute to the illegality of those statements, the CDA bars Jone's claims. *See Nemet*, 591 F.3d at 260 (affirming dismissal where plaintiff failed to show defendant "was responsible for the creation of the allegedly defamatory content *at issue*" (emphasis added).

*Id.* at 415.

Just as Karamian was shielded from liability via the CDA because he did not materially contribute to the original derogatory article for which he opined about thereafter, Nehlen is, likewise, shielded from liability by the CDA because he did not materially contribute to the original article published by GotNews for which Nehlen thereafter opined.

Furthermore, Nehlen has a right, as recognized by Michigan law as the "wire service defense," to offer inaccurate commentary about breaking news stories of public concern—even when the underling news story constitutes fake news—, such as the one published by GotNews. See *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) (holding that a federal court sitting in

17

diversity jurisdiction must apply state substantive law to resolve claims arising under state law); *Howe v. Detroit Free Press*, 219 Mich.App. 150, 154, 555 N.W.2d 738 (1996), *aff'd*, 457 Mich. 871, 586 N.W.2d 85 (1998); *Dannis v. C&G Publ'g, Inc* 187 Mich.App. 691, 693, 468 N.W.2d 331 (1991) (holding that a defendant who adopts a rational interpretation of publicly available information has a defense as a matter of law to a suit for defamation); see also *Time, Inc., v. Pape*, 401 U.S. 279 (1971); *Orr v. Argus-Press Co.,* 586 F.2d 1108 (6th Cir. 1978).  Notwithstanding the CDA providing Nehlen absolute immunity for re-Tweeting GotNews' article and briefly opining about the same, the aforementioned Michigan wire service defense also shields Nehlen from liability insofar as Nehlen adopted a rational interpretation of news published on GotNews's website and opined about it.

To muzzle people from talking about horrific tragedies—such as the Charlottesville fiasco—as they unfold and bits of information are reported by third-party news websites is offensive to the right of Americans to speak and think freely and to receive and transmit information.

### 3.  CONCLUSION

For the reasons set forth herein, Plaintiffs have not alleged a claim against Nehlen for which relief can be granted, and thus Nehlen is entitled to dismissal of Plaintiffs' claims against him pursuant to Fed. R. Civ. P. 12(b)(6).  Nehlen is simply not legally responsible for what GotNews published on its website about Plaintiffs even though Nehlen published a hyperlink to the same and opined about it.  The CDA is clear in that Nehlen is absolutely shielded for providing a hyperlink to GotNews' article about Plaintiffs and for Nehlen having offered commentary about content originally provided by GotNews.  Furthermore, even if the elementary rules of the CDA— which Plaintiffs wantonly disregarded when they sued Nehlen—were not applicable, Nehlen still

enjoys absolute immunity by way of Michigan's wire service defense insofar as Nehlen offered commentary about a publicly available news article.

## VI.  CONCLUSION

For the reasons set forth herein, either the Court must dismiss the instant civil action against Nehlen—pursuant to Fed. R. Civ. P. 12(b)(2)—on the basis that it does not enjoy personal jurisdiction over him, or alternatively, the Court must dismiss the instant civil action against Nehlen—pursuant to Fed. R. Civ. P. 12(b)(6)—on the basis that Plaintiff's Complaint does not aver a cognizable claim against Nehlen with averments of fact in support thereof.

It is time for the Court to put an end to Plaintiffs' legally and factually baseless lawsuit against Nehlen.

Respectfully submitted,

**BRISTOW LAW, PLLC**


/s/ Kyle J. Bristow
Kyle J. Bristow (P77200)
P.O. Box 381164
Clinton Twp., MI 48038
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  BristowLaw@gmail.com
*Attorney for Paul Nehlen*

Dated:  May 4, 2018

20

## <u>CERTIFICATE OF SERVICE</u>

I, Kyle J. Bristow, affirm that I am an attorney of record for a party to the above-captioned

civil action, and on May 4, 2018, I electronically filed this document upon the Clerk of the Court

by using the Court's Electronic Filing System, which should send notification of said filing to all

attorneys of record who are registered to receive such electronic service.

/s/ Kyle J. Bristow_____
Kyle J. Bristow (P77200)
P.O. Box 381164
Clinton Twp., MI 48038
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  BristowLaw@gmail.com
*Attorney for Paul Nehlen*

Dated:  May 4, 2018