# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Joel Vangheluwe and Jerome
Vangheluwe,

        *Plaintiffs*,

    v.

GotNews, LLC, Freedom Daily,
LLC, Charles C. Johnson, Alberto
Waisman, Jeffrey Rainforth, Jim
Hoft, David Petersen, Jonathan Spiel,
Shirley Husar, Eduardo Doitteau,
Lita Coulthart-Villanueva, Kenneth
Strawn, Patrick Lehnhoff, Beth
Eyestone, Lori Twohy, Raechel
Hitchye, James Christopher Hastey,
Christopher Jones, Connie Comeaux,
Gavin McInnes, Richard Weikart,
and Paul Nehlen,

        *Defendants*.

Case No. :  2:18-cv-10542-LJM-EAS

Hon. Laurie J. Michelson

Mag. Elizabeth A. Stafford

| **BRISTOW LAW, PLLC** | **KIRK, HUTH, LANGE & BADALAMENTI, PLC** |
|---|---|
| Kyle J. Bristow (P77200) | Elizabeth P. Roberts (P76017) |
| P.O. Box 381164 | Raechel M. Badalamenti (P64361) |
| Clinton Twp., MI  48038 | 19500 Hall Rd., Ste. 100 |
| (T): (248) 838-9934 | Clinton Twp., MI 48038 |
| (F): (586) 408-6384 | (T): (586) 412-4900 |
| (E): | (F): (586) 412-4949 |
| BristowLaw@gmail.com | (E): eroberts@khlblaw.com |
| *Attorney for Paul Nehlen* | (E): rbadalamenti@khlblaw.com |
| | *Attorneys for Jerome Vangheluwe and* |
| | *Joel Vangheluwe* |
| | |

|  | **SOMMERMAN, McCAFFITY & QUESADA, L.L.P.**<br>Andrew B. Sommerman<br>3811 Turtle Creek Blvd., Ste. 1400<br>Dallas, TX 75219<br>(T): (214) 720-0720<br>(F): (214) 720-0184<br>(E): andrew@textrial.com<br>*Attorneys for Jerome Vangheluwe and*<br>*Joel Vangheluwe* |
|---|---|

## PLAINTIFFS' RESPONSE TO DEFENDANT PAUL NEHLEN'S FOURTH MOTION FOR DISMISSAL

NOW COME Plaintiffs Joel Vangheluwe and Jerome Valgheluwe, by and through Attorney Andrew B. Sommerman of Sommerman, McCaffity & Quesada, LLP, and hereby respond to Defendant Paul Nehlen's Fourth Motion for Dismissal.

1.  Defendant, in his own words, stated that Plaintiff Joel Vangheluwe is a car terrorist and open borders druggie. This is defamation.

2.  This Court has jurisdiction since Defendants clearly identified Plaintiffs as Michigan residents, a Michigan student, and Michigan car owner who used his car to commit terrorism.

3.  Defendant is neither a website nor local news agency entitled to the defenses under the CDA and the news wire defense.

## CONCLUSION

This Court should deny Defendant Paul Nehlen's Fourth Motion to Dismiss.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs' request this Court deny Defendant Paul Nehlen's Fourth Motion to Dismiss.

Respectfully submitted,

SOMMERMAN, McCAFFITY
& QUESADA, L.L.P.

_/s/ Andrew B. Sommerman_____
Andrew B. Sommerman*
ATTORNEYS FOR PLAINTIFFS
Texas State Bar No. 18842150
3811 Turtle Creek Boulevard,
Suite 1400
Dallas, Texas  75219
214/720-0720 (Telephone)
214/720-0184 (Facsimile)
andrew@textrial.com

**AND**

KIRK, HUTH, LANGE
& BADALAMENTI, PLC

_/s/ Raechel M. Badalamenti_____
Raechel M. Badalamenti (P64361)
CO-COUNSEL FOR PLAINTIFFS
19500 Hall Road, Suite 100
Clinton Township, MI  48038
(586) 412-4900   Fax:  (586) 412-4949
rbadalamenti@khlblaw.com

Dated:  June 20, 2018

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION FOR THE EASTERN DISTRICT OF MICHIGAN

Joel Vangheluwe and Jerome
Vangheluwe,

       *Plaintiffs*,

   v.

GotNews, LLC, Freedom Daily,
LLC, Charles C. Johnson, Alberto
Waisman, Jeffrey Rainforth, Jim
Hoft, David Petersen, Jonathan Spiel,
Shirley Husar, Eduardo Doitteau,
Lita Coulthart-Villanueva, Kenneth
Strawn, Patrick Lehnhoff, Beth
Eyestone, Lori Twohy, Raechel
Hitchye, James Christopher Hastey,
Christopher Jones, Connie Comeaux,
Gavin McInnes, Richard Weikart,
and Paul Nehlen,

       *Defendants*.

Case No. : 2:18-cv-10542-LJM-EAS

Hon. Laurie J. Michelson

Mag. Elizabeth A. Stafford

| **BRISTOW LAW, PLLC** | **KIRK, HUTH, LANGE & BADALAMENTI, PLC** |
|---|---|
| Kyle J. Bristow (P77200) | Elizabeth P. Roberts (P76017) |
| P.O. Box 381164 | Raechel M. Badalamenti (P64361) |
| Clinton Twp., MI 48038 | 19500 Hall Rd., Ste. 100 |
| (T): (248) 838-9934 | Clinton Twp., MI 48038 |
| (F): (586) 408-6384 | (T): (586) 412-4900 |
| (E): | (F): (586) 412-4949 |
| BristowLaw@gmail.com | (E): eroberts@khlblaw.com |
| *Attorney for Paul Nehlen* | (E): rbadalamenti@khlblaw.com |
| | *Attorneys for Jerome Vangheluwe and Joel Vangheluwe* |
| | |

|  | **SOMMERMAN, McCAFFITY & QUESADA, L.L.P.**<br>Andrew B. Sommerman<br>3811 Turtle Creek Blvd., Ste. 1400<br>Dallas, TX 75219<br>(T): (214) 720-0720<br>(F): (214) 720-0184<br>(E): andrew@textrial.com<br>*Attorneys for Jerome Vangheluwe and Joel Vangheluwe* |
| --- | --- |

## BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT PAUL NEHLEN'S FOURTH MOTION FOR DISMISSAL

i

# I. CONCISE STATEMENT OF ISSUES PRESENTED.

1. Did Defendant Nehlen subject himself to the jurisdiction of this Court?

   Plaintiffs' answer:  Yes; Nehlen's anticipated response: No.

2. Is Defendant's defamatory statements protected by the Communication Decency Act?

   Plaintiffs' answer: No; Nehlen's anticipated response: Yes.

3. Is Defendant's defamatory statements protected by the Wire Service Defense?

   Plaintiffs' answer: No; Nehlen's anticipated response: Yes.

ii

## II. CONTROLLING LEGAL AUTHORITIES

### CASE LAW

*Calder v. Jones,* 465 U.S. 783 (1984)....................................................................7, 9

*CompuServe, Inc. v. Patterson*, 89 F. 3d 1257 (6th Cir. 1996) ................................10

*Elhamaji v. Fox Television Stations, Inc.*, 37 Misc. 3d 1232(a), 966 N.Y.S. 2d 345 (Sup. Ct. 2012)....................................................................................................4

*Howe v. Detroit Free Press*, 219 Mich. App. 150, 555 N.W.2d 738 (1996) ... 20, 21

*MCW v. Badbusinessbureau.com*, 2004 WL 833595 (N.D. Tex. 2004) .......... 13, 15

*Walden v. Fiore*, 471 U.S. 469 (2014).....................................................................7

### STATUTORY LAW

Communications Decency Act, 47 U.S.C. § 230 ........................................ 3, 14, 17

*M.C.L.*, § 600.75 ........................................................................................................5

### COURT RULES

Federal Rule of Civil Procedure 12 ..........................................................................1

iii

## III.  INDEX OF AUTHORITIES

**CASE LAW**

*Abramski v. United States*, 134 S. Ct. 2259 (2014) .................................................14

*Alahverdian v. Nemelka*, 3:15-CV-060, 2015 WL 5004866 (SD Ohio Aug. 24, 2015) ........................................................................................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)... 1, 6, 9

*Baldino's Lock & Key Service, Inc. v. Google, Inc.*, E.D.Va.2015, 88 F.Supp.3d 543, *affirmed* 624 Fed.Appx. 81, 2015 WL 7888322 ........................................16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)....................................................................................................................1

*Binion v. O'Neal*, 95 F. Supp. 3d 1055 (E.D. Mich. 2015) ....................................11

*Calder v. Jones,* 465 U.S. 783 (1984).................................................................7, 9

*Caraccioli v. Facebook, Inc.*, N.D.Cal.2016, 167 F.Supp.3d 1056, *affirmed* 700 Fed.Appx. 588, 2017 WL 2445063 ....................................................................16

*Carafano v. Metrosplash.com Inc.*, C.D.Cal.2002, 207 F.Supp.2d 1055, *affirmed on other grounds* 339 F.3d 1119 .....................................................................16

*CompuServe, Inc. v. Patterson*, 89 F. 3d 1257 (6th Cir. 1996) ...............................10

*Directory Assistants, Inc. v. Supermedia, LLC*, E.D.Va.2012, 884 F.Supp.2d 446 ........................................................................................16

*Elhamaji v. Fox Television Stations, Inc.*, 37 Misc. 3d 1232(a), 966 N.Y.S. 2d 345 (Sup. Ct. 2012)........................................................................4

*Howe v. Detroit Free Press*, 219 Mich. App. 150, 555 N.W.2d 738 (1996) ... 20, 21

*Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir. 2014).. 14, 19

*Klayman v. Zuckerberg*, C.A.D.C.2014, 753 F.3d 1354, 410 U.S.App.D.C. 187, *certiorari denied* 135 S.Ct. 680, 190 L.Ed.2d 391 ..............................................16

*MCW v. Badbusinessbureau.com*, 2004 WL 833595 (N.D. Tex. 2004) .......... 13, 15

*Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001) .........................................................7

*O'Kroley v. Fastcase, Inc.*, 831 F.3d 352 (6th Cir. 2016) .......................... 16, 17, 18

*Pennie v. Twitter, Inc.*, N.D.Cal.2017, 281 F.Supp.3d 874 ....................................16

*Reuters, Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2nd Cir. 1990)...................20

*Ricci v. Teamsters Union Local* 456, C.A.2 (N.Y.) 2015, 781 F.3d 25 .................16

*Rice*, 154. Fed. Appx. At 460.......................................................................................7

iv

*Roca Labs, Inc., v. Consumer Opinion Corp.*, 140 F.Supp.3d 1311 (M.D. Fla. 2015) ........................................................................................................18
*Shafer v. City of Boulder*, 876 F. Supp. 2d 915 (D. Nev. 2012)...............................4
*Taylor v. Brinker Int'l Payroll Corp.*, No. 00 C 3866, 2002 WL 471994 (N.D. Ill., Mar. 22, 2002) ........................................................................................4
*Torres v. Lynch*, 136 S. Ct. 1619 (2016).................................................................14
*Walden v. Fiore*, 471 U.S. 469 (2014)......................................................................7
*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) ........10

**Statutory Authority**

47 U.S.C. § 230 ........................................................................................... 14, 17
Communications Decency Act, 47 U.S.C. § 230 ....................................... 3, 14, 17
*M.C.L.*, § 600.75 ..........................................................................................5

**COURT RULES**

Federal Rule of Civil Procedure 12 ..........................................................................1

**Legislative History**

H.R. CONF. REP. 104-458 at 194 (1996), *as reprinted in* 1996 U.S.C.C.A.N. 10, 208...............................................................................................................14

v

## SUMMARY OF THE ARGUMENT

Defendant claims that because he made defamatory statements, attached an article form "Got News" on his social media account about a Michigan resident, he has no liability, and this Court has no jurisdiction.[1]  Defendant relies exclusively on the use of his own Twitter account for the proposition that defamation is acceptable on the internet so long as it is accompanied by a news article, and alleges this Court has no jurisdiction because the statement was made on the internet.  This is not true.

### A.  Defendant's own words.

Defendant created his own content on his account by calling Plaintiff a "car terrorist" and "open borders druggie."[2]  This is not true.  He then selected a GotNews "article" that further defames Plaintiffs and identifies Plaintiffs in detail as being citizens of Michigan.

---

[1] A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

[2] Nehlen posted from his Twitter account "Breaking! #Charlottesville car terrorist is anti-Trump, open borders druggie."  The then incorporated a GotNews article into his post which names Joel Vangheluwe as the attacker.  See Plaintiffs' Amended Complaint, ¶¶ 106-107, pp. 42-43.

By stating Plaintiff is a "car terrorist" and "open borders druggie," and then selecting the GotNews article for its defamatory content for dissemination, Defendant further enhances the context of his own statements and those of GotNews. It leads to a "framing effect," which focuses the attention to it and influences its interpretation and the magnitude ascribed to it, especially when the statements are endorsed by a politician's own words that Joel Vangheluwe is a terrorist and open borders druggie, and then bolstering his own words with defamation of GotNews. *See,* Amos Tversky & Daniel Kahneman, *The Framing Effect of Decisions and Psychology of Choice,* 211 SCI, 453, 457-88 (1981).

His own word selection and the addition of GotNews defamatory content for dissemination enhances its magnitude and exacerbates the gravity of harm.  It also increases the likelihood of users to spread the defamatory speech, because the more people have access to it, the more likely they are to believe the speech.  Thus, it may generate informational and reputational cascades and lead to an extensive diffusion of ideas through the network.

### B.  Nehlen's actions subjected him to Michigan courts.

Plaintiffs have pled facts that clearly demonstrate that this Court has jurisdiction. Defendant is a politician raising money in Michigan.  He defamed Plaintiffs as part of his alt-right agenda.  Amended Complaint, ¶¶. 39-41.  As part of

his defamatory Tweet, he included information about Plaintiffs being from Michigan. There are sufficient contacts with Michigan for there to be jurisdiction.

Defendant is no stranger to Michigan. He is a former citizen of this state who is now a politician in Wisconsin. He is a self-proclaimed "pro white Christian American candidate."[3] He raises funds in Michigan to support his alt-right political candidacy. He made the statements in this case to show his support for the alt-right agenda, which in turn would help his fundraising in Michigan. He has clearly availed himself of the jurisdiction of this Court.

## C. Defendant is not a website or local news agency.

Defendant puts forth two arguments that claim to protect the Defendant from liability. First, the Defendant cites the Communications Decency Act, 47 U.S.C. § 230 (The "CDA"), and states that the CDA absolutely shields him from liability. (Motion to Dismiss at 18). Secondly, Defendant claims that the wire-service defense protects him from liability. (Motion to Dismiss at 18-19).

---

[3] https://www.washingtonpost.com/opinions/the-trump-era-is-a-renaissance-of-half-witted-intolerance/2018/05/17/09c8848c-59f7-11e8-858f-12becb4d6067_story.html?noredirect=on&utm_term=.82391b34d84b

https://www.vox.com/policy-and-politics/2018/4/12/17224086/paul-nehlen-alt-right-paul-ryan-race

https://www.cnn.com/2018/05/04/opinions/strange-collection-of-extremists-running-as-republicans-opinion-love/index.html

Mr. Nehlen's Twitter account is neither a neutral website nor an interchange computer service.  Moreover, he did not simply pass on a "news story."  Instead, he made his own comment that Plaintiff was a "car terrorist," "anti-Trump," "open borders druggie."  Defendant admits in his motion he wrote the words, "Breaking Charlottesville car terrorist is anti-Trump, open borders druggie," and then goes on to attach the GotNews' article, identifying the Plaintiffs with pictures and statements of how they reside in Michigan. Defendant Nehlen's Fourth Amended Motion for Dismissal Pursuant to Fed. R. Civ. P. 12(B)(2) and 12(B)(6), p. 6.  He created the content that called Plaintiff a car terrorist and open borders druggie.  Since he created the content, he must be liable for it.  Falsely accusing Plaintiff of being a "car terrorist" is defamation.  *Elhamaji v. Fox Television Stations, Inc.*, 37 Misc. 3d 1232(a), 966 N.Y.S. 2d 345 (Sup. Ct. 2012).

Accusing Plaintiff of being an "open borders druggie" is defamation.  *Shafer v. City of Boulder*, 876 F. Supp. 2d 915 (D. Nev. 2012); *Taylor v. Brinker Int'l Payroll Corp.*, No. 00 C 3866, 2002 WL 471994 (N.D. Ill., Mar. 22, 2002).

The Court should deny the Defendant's Motion to Dismiss.

## I. ARGUMENT

### A. Nehlen has availed himself of the jurisdiction of this Court.

The Court has jurisdiction so long as Defendant's actions are done in Michigan or <u>consequences occur</u> in Michigan from Defendant's tort.  *M.C.L.*, §

600.75.  Plaintiffs have alleged facts that give this Court jurisdiction.  Below are some of those facts:

39.    **Defendant Paul Nehlen.** Defendant Paul Nehlen is an alt-right politician who has deliberately availed himself to the jurisdiction of Michigan courts. Defendant Paul Nehlen made a defamatory statement that he knew would have a potentially devastating impact upon the Plaintiffs, and he knew that the brunt of that injury would be felt by the Plaintiffs in Michigan – the state where Plaintiffs live and work. Under these circumstances, Defendant Paul Nehlen reasonably anticipated being haled into court in Michigan to answer for the truth of the statements made.

40.    Defendant Paul Nehlen is seeking office as a member of the U.S. House of Representatives.  He seeks to occupy the seat now held by Speaker of the House Paul Ryan.  Defendant Paul Nehlen has furthered his political agenda by seeking contributors in Michigan and the support of Michigan residents. To further his alt-right agenda, Defendant Paul Nehlen sent the defamatory message at issue through his Twitter account to his supports in Michigan to curry favor with them and gain financial support for his campaign. Defendant Paul Nehlen purposely availed himself of the privilege of acting in Michigan though his website, because his website is interactive to a degree that reveals he specifically intended interaction with residents of Michigan. Defendant Paul Nehlen intentionally committed a tortious act which was expressly aimed for dissemination in Michigan, and the brunt of the effects of those actions were felt within Michigan. Defendant Nehlen's defamatory statement – discussed in more detail below – was in further support of his alt-right political platform. He knowingly targeted a Michigan resident, as the article stated Joel Vangheluwe lived in Michigan, the car was registered in Michigan, and Joel Vangheluwe went to high school in Michigan.  Defendant Nehlen is a politician whose Campaign Finance Reports confirm he raises money from Michigan citizens.  This was a call to action about Michigan residents.

41.    His motive is to collect monetary funds to support his campaign and alt-right political agenda. In fact, Defendant Paul Nehlen's

Campaign Finance Report stated that 95% of his contributions came from *outside* his home state, with Michigan being identified as one of the top six states to contribute money.[4] Defendant Nehlen raised more money in Michigan than he did in his home state.[5] Defendant Paul Nehlen's political campaign website touts his business experience, including servicing as the director and general manager for SPX Corporation in Michigan from 2012 to 2013.[6] Defendant Paul Nehlen owned property in Michigan, worked in Michigan, and previously resided in Michigan. In February 2018, Defendant Paul Nehlen was also a featured speaker at Battle Cry '18 -- an event sponsored by the Michigan Conservative Coalition and recognized as "Michigan's and the Midwest's premier annual event for conservatives"-- at the Soaring Eagle Casio and Resort in Mt. Pleasant, Michigan.[7] In 2012, Defendant Nehlen "transferred his vote registration to Richland, MI in order to vote there in the 2012 general election."[8]

These facts have not been disputed and should be taken as true. *Iqbal*, 556 U.S. 662 (2009). Defendant Nehlen, an alt-right politician, made defamatory comments about Michigan residents that caused severe harm to Plaintiffs in Michigan. (Amended Complaint, p. 11.) Defendant attached a news article that (1) identified Plaintiffs as Michigan residents, (2) identified Joel as going to a Michigan high school in Romeo, Michigan, (3) identified Joel as aspiring to be a Michigan State University student, (4) claimed the murder weapon is a car that was owned by Jerome in Michigan, and (5) stated the vehicle was licensed in Michigan where

---

[4] http://mediatrackers.org/2016/07/20/top-takeaways-paul-nehlens-campaign-finance-report/
[5] http://mediatrackers.org/2016/07/20/top-takeaways-paul-nehlens-campaign-finance-report/
[6] http://www.electnehlen.com/
[7] https://www.waamradio.com/event/paul-nehlen-to-speak-at-battle-cry-18/
[8] http://mediatrackers.org/2016/04/19/ryan-challenger-registered-vote-4-states-10-years/

Jerome worked. Defendant's defamation was directed into Michigan.  This alone is sufficient to provide jurisdiction to this Court.  *Calder v. Jones,* 465 U.S. 783 (1984), *Walden v. Fiore*, 471 U.S. 469 (2014).

This Court need look no further than *Alahverdian v. Nemelka*, 3:15-CV-060, 2015 WL 5004866 at *7 (SD Ohio Aug. 24, 2015).   In *Alahverdian*, plaintiff's identity was stolen and used by defendant on the internet and Twitter account as his own.  Defendant wrote disgusting and inappropriate emails using plaintiff's identity.  Plaintiff sued defendant for sending these emails and tweets.

Defendant, a citizen of Utah, claimed that the Ohio court lacked jurisdiction over him. The court disagreed:

> Although Defendant may have never traveled to Ohio, nor has he previously conducted activities within Ohio, it is alleged that Defendant sent electronic communications to various internet users world-wide causing harm to Plaintiff whom Defendant knew to reside in Ohio. Additionally, as mentioned above, although mere injury is not a sufficient connection with the forum State, this injury suffices since the Defendant in this case, unlike the one in *Walden*, formed and initiated the contact with the forum State himself.

> Furthermore, the Sixth Circuit has held that "'[m]aking phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action.'"  *Rice*, 154. Fed. Appx. At 460 quoting *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001).  Similar to making phone calls or sending facsimiles, sending emails into the forum intended to harm a specific person located in that forum is sufficient to confer jurisdiction over a foreign defendant where the emails form the basis for the action.

Here, Defendant Nehlen clearly knew Plaintiffs were from Michigan and cited the GotNews article identifying them as Michigan citizens. Nehlen's use of the GotNews article went beyond merely identifying location, but also their schools, their pictures, their cars and their screenshots of Plaintiffs' social media accounts. This is sufficient contact with Michigan for jurisdiction. Like in *Alahverdian*, the alternative to plaintiff filing suit in his home jurisdiction is to file in defendant's home state. This is not a reasonable solution.

> . . . it would place the same burdens, if not additional burdens, on the Plaintiff as this case in Ohio places on the Defendant. The difference, however, is Plaintiff arguably did not act in any way to bring this upon himself. Instead, Defendant allegedly directed his activity towards Plaintiff in Ohio to harm Plaintiff in Ohio. Thus, even if all there is here is a Defendant broadcasting things to the world about Plaintiff, it is more than what Utah would have under these circumstances.
>
> Therefore, since the Ohio long-arm statute confers jurisdiction, and Federal Due Process concerns do not defeat jurisdiction, this court denies Defendant's Rule 12(b)(2) motion.

### B. *Calder* effects test requires jurisdiction in Michigan.

It is called the "*Calder* effects test" because jurisdiction arises from "effects" of defamation occurring in the Plaintiffs' resident state.

In *Calder*, Shirley Jones (of Partridge Family fame) sued the National Enquirer and Calder (the editor of the article) for defamation. The National Enquirer had alleged Jones was an alcoholic (here Defendant claims Plaintiff was a "druggie").

The U.S. Supreme Court in a unanimous decision noted that Ms. Jones was in California and the "effect" of the defamation was in California.  The court rejected defendant's argument that the National Enquirer should be sued in Florida since the defendant was based in Florida and had made the statements in Florida.  The court noted that defendant "wrote and edited an article that they knew would have a potentially devastating impact on [Jones], and they knew that the brunt of that injury would be felt by [Jones] in the state in which she lives . . . ." *Calder* at 783.

Here, Defendant knew that his defamatory statements were made against a Michigan resident, and the effects would be felt in Michigan.  Defendant even identified Plaintiffs as Michigan residents who lived in Michigan, went to school in Michigan and owned and drove the car in Michigan. (Amended Complaint, p. 11.) Under the *Calder* effects test, jurisdiction in Michigan is proper.

### C. Defendant's purpose was to raise money in Michigan.

Defendant Nehlen has not disputed, and this Court should accept as true, a number of facts from Plaintiffs' Complaint that show Nehlen's intent to avail himself of this jurisdiction when he committed the acts of defamation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Plaintiff's allegation in complaint must be accepted as true.).

Defendant fails to address Plaintiffs' allegations that he is a politician seeking to raise money in Michigan.  Plaintiffs have alleged that the purpose of Defendant's statement was to further his political agenda so he could raise money in Michigan

for his alt-right agenda. Such allegations meet the test set out in *CompuServe v. Patterson*.

In *CompuServe*, the Sixth Circuit addressed the significance of doing business over the Internet. *CompuServe, Inc. v. Patterson*, 89 F. 3d 1257 (6th Cir. 1996). In that case, Patterson, a Texas resident, entered into a contract to distribute shareware through CompuServe's Internet servicer located in Ohio. *CompuServe*, 89. F.3d. at 1260. From Texas, Patterson electronically uploaded thirty-two master software files to CompuServe's server in Ohio via the Internet. *Id*. at 1261. One of Patterson's software products was designed to help people navigate the Internet. *Id.* When CompuServe later began to market a product that Patterson believed to be similar to his own, he threatened to sue. *Id.* CompuServe brought an action in the Southern District of Ohio, seeking a declaratory judgment. *Id.* The District Court granted Patterson's motion to dismiss for lack of personal jurisdiction and CompuServe appealed. *Id.* The Sixth Circuit <u>reversed</u>, reasoning that Patterson had purposefully directed his business activities toward Ohio. *Id.*, at 1264-66.

As in *Zippo* and in *CompuServe*, the test is what business activities did the defendant intend in the jurisdiction. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). Here, Plaintiffs have alleged that Defendant's purpose in defaming Plaintiffs was to further his business as a politician. Defendant raises funds in Michigan since it was his former place of citizenship. Defendant defamed

Plaintiffs in Michigan to curry favor with those who have a similar alt-right agenda in Michigan and ultimately seek contributions from them.

Defendant ignores all of these facts in his Motion to Dismiss. Defendant fails to address the fact that his defamation was directed at a Michigan resident, going to school in Michigan, and that the car he claims was used was owned by Plaintiffs in the past in Michigan. Yet, these facts link the defamatory statements to his fundraising efforts in Michigan. There can be no clearer intent to avail himself of Michigan jurisdiction.

### D. Defendant's reliance on *Binion* is misplaced.

The majority of Defendant's argument on jurisdiction is based on the *Binion* decision. *Binion* is easily distinguished. In *Binion*, the famous basketball player Shaquille O'Neal posted a picture of plaintiff and himself. *Binion v. O'Neal*, 95 F. Supp. 3d 1055 (E.D. Mich. 2015). O'Neal attempted to make a face, mimicking plaintiff and highlighting plaintiff's disabilities. Plaintiff suffered from a rare genetic condition called ectodermal dysplasia, which causes cosmetic abnormalities.

Considering the decision in *Binion* and looking at the underlying pleadings (of which Plaintiffs ask the Court to take judicial notice), it is clear that O'Neal never said that plaintiff lived in Michigan; O'Neal didn't know plaintiff lived in Michigan. O'Neal made no derogatory comments about plaintiff but did make a distasteful photograph of himself by making a face. He did not claim any defamatory

statements that linked plaintiff to Michigan.  The photo of plaintiff that O'Neal used had come from plaintiff's own Instagram post but did not have the same notations of his home state as Defendant did here of the Vangheluwes.  In *O'Neal*, defendant made no identification of plaintiff being from Michigan, but here, the identity is repleat with defamation as stated earlier.

The *Binion* facts are very different from the case at hand.  Here, Defendant knew Plaintiffs are from Michigan, identified them as Michigan residents and showed pictures of Plaintiff on social media that identified him from Michigan. Defendant stated Plaintiff had been a student at Romeo High School in Michigan, stated that Plaintiff wanted to attend Michigan State University, and stated that Jerome owned the murder weapon, a car, in Michigan.  Defendant made these statements in furtherance of his business as a politician, so he could continue his fundraising in Michigan with likeminded individuals in Michigan and with his former business colleagues and friends from when he was a resident and business owner in this State.  He continues to fundraise and give political speeches in Michigan to further the same goal he had by publishing the defamatory statements of Plaintiff.  None of these facts were present in the *Binion* case.  In fact, the *Binion* court made mention that no such connection to Michigan had been made.

## II.  THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230 (THE "CDA"), DOES NOT APPLY TO THE DEFENDANT.

Defendant attempts to explain this controversy by using a hypothetical. (Motion to Dismiss at 13). This hypothetical explains precisely what did not happen. In this case, the Defendant did not simply pass on information to third parties walking by. Rather the Defendant pointed at a particular individual, and stated false, defamatory terms as facts.

Defendant's example of this controversy playing out at a street corner indicates a fundamental lack of understanding of the present issue. A more analogous example would be the tortfeasor pointing to the plaintiff and saying to third-parties walking by—"Holy cow! This guy is the Charlottesville Car Terrorist and he is also an Anti-Trump, Open Borders Druggie. Here's information from GotNews (a group I contribute articles to) about how he is located in Michigan and how he committed the crime."

### A.     The Communications Decency Act, 47 U.S.C. § 230 (The "CDA"), does not apply to the Defendant.

Defendant would have this Court believe that the Communications Decency Act, 47 U.S.C. § 230 (the "CDA"), shields anyone from liability that uses Twitter. (Motion to Dismiss at 13). In essence, Defendant's argument is that defamation is acceptable so long as it is said on social media and you attach a news reference. Defendant has misunderstood the objective of the CDA. The CDA provides some level of immunity to "interactive computer service." In other words, it protects those

websites that are a conduit for information so long as the website did not create the content. *MCW v. Badbusinessbureau.com*, 2004 WL 833595 (N.D. Tex. 2004). Here, it protects Twitter, not Nehlen. Defendant created content when he called Joe Vangheluwe a "car terrorist" and an "open borders druggie." The immunity under CDA would allow Twitter to escape liability since it did not create the defamatory statement, but not an individual like Mr. Nehlen.

### B. Meaning and purpose of the CDA Act.

A fundamental tenant of statutory construction states that "a court must (as usual) interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history, and purpose. *Torres v. Lynch*, 136 S. Ct. 1619, 1626 (2016), *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014).

The CDA itself is titled "Protection for private blocking and screening of offensive material." 47 U.S.C. § 230. This heading is consistent with the overall purpose of the CDA which is explicitly stated in a House Conference Report. "One of the specific purposes of this section is to overrule *Stratton-Oakmont v. Prodigy* and any other similar decisions which have treated such providers and users as publishers or speakers of content that is not their own because they have restricted access to objectionable material." H.R. CONF. REP. 104-458 at 194 (1996), *as reprinted in* 1996 U.S.C.C.A.N. 10, 208.

Courts in Michigan have correctly understood the application and scope of the CDA. *See Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014) (At its core, § 230 bars "lawsuits seeking to hold a <u>service provider liable</u> for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.")

This Court need look no further then *MCW, Inc. v. Badbusinessbureau.com, LLC*, No. CIV. A. 3:02-CV-2727-G, 2004 WL 833595 (N.D. Tex. Apr. 19, 2004). In *MCW*, the defendant badwitnessbureau.com (hereinafter "BBB") posts consumer complaints on the "Ripoff Report" website. Defendant Magedson was an individual who posted on that website derogatory comments about MCW. The court went on to analyze the defendant's right to immunity under the CDA. In order to be immune, the defendant must be an interactive computer service. Defendant Nehlen is not such a provider. Twitter is such a provider. The court further explained that: "In determining whether the defendants qualify as information content providers, the critical issue is whether they are 'responsible in whole or in part, for the erection or development of [any disputed] information." *Id.*

As in the *MCW* case, "In creating headings, reports, titles, and messages, the defendants are also information content providers because they are 'responsible, in whole or in part, for the creation or development of third parties' defamatory messages." *Id.* at *10.

Here, Defendant clearly states that Plaintiff was a "car terrorist" and an "open borders druggie." This is Defendant's content he provided before he attached the GotNews article.

The purpose of the CDA is to give Twitter immunity as it is an "interactive computer service," but Nehlen is not.

### C. Defendant is not an "an interactive computer service" under the CDA.

Defendant has mischaracterized his profile as "an interactive computer service." (Motion to Dismiss at 14). Defendant has given the statutory definition of the "interactive computer service" without any explanation on why a Twitter Profile would be an "interactive computer service" under the CDA. (Motion to Dismiss at 14).

In fact, case law has given an indication of what would be considered an "interactive computer service" and a profile on social media has not been included. The following list is a compilation of internet resources that are considered to be an "interactive computer service" under the statute:

1) Website hosting service - *Ricci v. Teamsters Union Local* 456, C.A.2 (N.Y.) 2015, 781 F.3d 25.
2) Social networking website - *Klayman v. Zuckerberg*, C.A.D.C.2014, 753 F.3d 1354, 410 U.S.App.D.C. 187, *certiorari denied* 135 S.Ct. 680, 190 L.Ed.2d 391; *Pennie v. Twitter, Inc.*, N.D.Cal.2017, 281 F.Supp.3d 874; *Caraccioli v. Facebook, Inc.*, N.D.Cal.2016, 167 F.Supp.3d 1056, *affirmed* 700 Fed.Appx. 588, 2017 WL 2445063.

3) Internet search engine operator - *Baldino's Lock & Key Service, Inc. v. Google, Inc.*, E.D.Va.2015, 88 F.Supp.3d 543, *affirmed* 624 Fed.Appx. 81, 2015 WL 7888322; *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 354 (6th Cir. 2016).

4) Internet website - *Directory Assistants, Inc. v. Supermedia, LLC*, E.D.Va.2012, 884 F.Supp.2d 446; *Carafano v. Metrosplash.com Inc.*, C.D.Cal.2002, 207 F.Supp.2d 1055, *affirmed on other grounds* 339 F.3d 1119.

There is no case that has held the content created, edited, added to and disseminated by an individual Twitter account is a type of "interactive computer service."

Case law is consistent with the statutory definition of the CDA. Under the CDA, the term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions. 47 U.S.C. § 230(f)(2).

Therefore, Twitter, rather than Defendant, will be considered an "interactive computer service" since Twitter, and not Defendant's Twitter profile provided or enabled computer access by multiple users to a computer service.

### D. Defendant's cases distinguished:

O'Kroley v. Fastcase, Inc.

Defendant cites *O'Kroley v. Fastcase*, Inc., 831 F.3d 352 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 639, 196 L. Ed. 2d 538 (2017) to support the argument that the

case against the Defendant should be dismissed. (Motion to Dismiss at 15). However *O'Kroley*, does not apply as the CDA is not implicated in the present case.

In *O'Kroley*, plaintiff brought action against internet search engines, alleging various claims related to "severe mental anguish" he purportedly suffered due to manner in which search results for his name were displayed. *Id.* at 354.

The Court correctly interpreted the provisions under CDA and held that under Communications Decency Act, internet search engine could not be held liable for claims related to manner in which search results were displayed. *Id.* Plaintiffs agree with this decision: Google and Twitter are immune, not Nehlen.

Specifically the court states, "Seeking to encourage websites like Google to reproduce content from other Internet users, see id. § 230(a)-(b), Congress enacted the Communications Decency Act, which applies to 'interactive computer service provider[s]' and which immunizes them from claims that seek to treat them as 'publisher[s]' of third-party content." *Id.*

Roca Labs, Inc., v. Consumer Opinion Corp.,

Defendant cites a case from Florida: *Roca Labs, Inc., v. Consumer Opinion Corp.*, 140 F.Supp.3d 1311 (M.D. Fla. 2015). (Motion to Dismiss at 15). In *Roca*, the defendant was a consumer review website therefore the CDA immunity provision was relevant. As discussed in Section II, a private individual's Twitter profile is not given protection under the CDA.

<u>Jones v. Dirty World Entertainment Recordings</u>

Defendant then cites *Jones v. Dirty World Entertainment Recordings, LLC.* (Motion to Dismiss at 15). In *Jones*, a Cheerleader for professional football team brought action asserting state-law defamation claims against operators of user-generated, online tabloid. *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir. 2014).

Defendant mistakenly relies on *Jones* to assert Defendant is shielded from liability by the CDA because he did not materially contribute to the original article published by GotNews for which Defendant thereafter opined. (Motion to Dismiss at 17). That is not true.  Defendant called Plaintiff a "car terrorist" and "open borders druggie."

## III. WIRE SERVICE DEFENSE DOES NOT APPLY TO THE DEFENDANT.

### A. Wire-service defense can be used by newspapers agencies.

Defendant claims he is a news agency.  He is not.  He is an alt-right politician with a Twitter account.  Yet, Defendant claims the "wire service defense" allows him to offer inaccurate commentary about breaking news stories of public concern— even when the underling news story constitutes fake news— such as the one published by GotNews. (Motion to Dismiss at 17).

Defendant cites *Howe v. Detroit Free Press* to support this proposition. (Motion to Dismiss at 18). However, a quick reading of *Howe* clarifies when the wire-service defense can be used. "In summary, if a <u>local news organization</u> republishes, without substantial change or knowledge of falsity, a wire-service release received from a reputable news agency, the contents of which do not reasonably indicate potential inaccuracy, the wire-service defense is available, and the local news organization has no duty to independently verify the accuracy of the wire release and cannot be negligent, as a matter of law, for failing to do so." *Howe v. Detroit Free Press*, 219 Mich. App. 150, 156, 555 N.W.2d 738, 741 (1996).

"We note that the wire-service defense is not so much a defense as it is a definition of a local news organization's duty". *Id.*

This defense is only available to a news agency. *Id.* at 154.  In *Howe*, a major league pitcher had news articles written about his family, their abuse and his drug addiction. The Detroit Free Press obtained the article from the KTN News Wire.

The court noted this defense is available to <u>local news agencies</u>.  *Id.* at 154. Here, Defendant Nehlen is not a news agency.  He is a politician with a Twitter account.

*Howe* goes on to state that the defense is only available if the local news obtained the story from a reputable news wire.  *Id.* at 156.  Here, GotNews is not reputable media. (https://mediabiasfactcheck.com/gotnews/). Nor is it a newswire

which sells stories to subscribers which are newspapers and news magazines. *Reuters, Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 905 (2nd Cir. 1990).

Finally, *Howe* requires that the story be from a reputable source and free from internal inconsistencies. *Howe* at 741. Here, the GotNews' article is internally inconsistent. It blames the Vangheluwes for a murder in Virginia. GotNews clearly identified the Vangheluwes as residing and going to school in Michigan. Yet, they also claim the car in question is registered in Ohio. Any reasonable "news agency" would at least investigate this internal inconsistency before publishing it.

Therefore, the wire-service defense cannot be used by the Defendant as the Defendant is not a news organization by any definition.

## CONCLUSION

For the above-stated reasons, this Court should deny Defendant Paul Nehlen's Fourth Motion to Dismiss in its entirety.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs' request this Court deny Defendant Paul Nehlen's Fourth Motion to Dismiss.

Respectfully submitted,

SOMMERMAN, McCAFFITY
& QUESADA, L.L.P.

 _/s/  Andrew B. Sommerman_____
Andrew B. Sommerman*

ATTORNEYS FOR PLAINTIFFS
Texas State Bar No. 18842150
3811 Turtle Creek Boulevard,
Suite 1400
Dallas, Texas  75219
214/720-0720 (Telephone)
214/720-0184 (Facsimile)
andrew@textrial.com

**AND**


KIRK, HUTH, LANGE
& BADALAMENTI, PLC

*/s/ Raechel M. Badalamenti*
Raechel M. Badalamenti (P64361)
CO-COUNSEL FOR PLAINTIFFS
19500 Hall Road, Suite 100
Clinton Township, MI  48038
(586) 412-4900   Fax: (586) 412-4949
rbadalamenti@khlblaw.com

Dated:  June 20, 2018

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on June 20, 2018, the foregoing Plaintiffs' Response to Defendant Paul Nehlen's Fouth Motion for Dismissal was served via ECF on counsel of record who have appeared in the case.

Furthermore, on June 20, 2018, I affirm that I placed true and accurate copies of this document in First Class postage-prepaid, properly addressed, and sealed envelopes which were addressed to:  Lita Coulthart-Villanueva, 1543 Jeffries St., Anderson, CA 96007 and Kenneth G. Strawn, 23874 Cypress Lane, Mission Viejo, CA 92691.

_/s/  *Andrew B. Sommerman*_____
Andrew B. Sommerman