# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| JOEL VANGHELUWE, et al., | Case No.: 2:18-cv-10542-LJM-EAS |
| Plaintiffs, | Hon. Laurie J. Michelson |
| v. | Mag. Elizabeth A. Stafford |
| GOTNEWS, LLC, *et. al.* | |
| Defendants. | |

## DEFENDANT GOTNEWS, LLC's ANTI-SLAPP MOTION
### (Evaluated under Fed. R. Civ. P. 56)

Andrew B. Sommerman
SOMMERMAN, McCAFFITY
  & QUESADA, L.L.P.
3811 Turtle Creek Blvd., Ste. 1400
Dallas, TX 75219
andrew@textrial.com

Raechel M. Badalamenti
KIRK, HUTH, LANGE
  & BADALAMENTI, PLC
19500 Hall Road, Suite 100
Clinton Township, MI 48038
rbadalamenti@khlblaw.com

*Attorneys for Plaintiffs*
*Joel Vangheluwe & Jerome Vangheluwe*

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Tel: (702) 420-2001
ecf@randazza.com

Herschel P. Fink (Reg. # P13427)
JAFFE RAIT HEUER & WEISS, P.C.
Grand Park Centre Building
28 W. Adams Ave., Suite 1500
Detroit, MI 48226
Tel: (313) 800-6500
hfink@jaffelaw.com

*Attorneys for Defendants*
*GotNews, LLC & Charles C. Johnson*

## DEFENDANT GOTNEWS, LLC's ANTI-SLAPP MOTION
### (Evaluated under Fed. R. Civ. P. 56)

Defendant GotNews, LLC ("GotNews"), hereby files its Special Motion to Strike Plaintiffs' Amended Complaint (Dkt. No. 12) under California's Anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, and requests that the Court dismiss Plaintiffs' Amended Complaint in its entirety as to GotNews and award GotNews its reasonable costs and attorneys' fees incurred in defending itself from this action.[1]  GotNews spoke out on an issue of public concern and Plaintiff Joel Vangheluwe cannot succeed on the merits of his claim.  The basis for this motion is explained in the accompanying Brief in Support.

Dated: June 26, 2018              Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC

Herschel P. Fink (Reg. # P13427)
JAFFE RAIT HEUER & WEISS, P.C.

*Attorneys for Defendants*
*GotNews, LLC & Charles C. Johnson*

---

[1]   Plaintiffs accepted offers of judgment under Fed. R. Civ. P. 68 by Defendant Charles Johnson on May 30, 2018.  (*See* Dkt. Nos. 32 & 33.)  Plaintiff Jerome Vangheluwe accepted GotNews's offer of judgment on May 30, 2018.  (*See* Dkt. No. 34.)  Accordingly, this Motion only seeks dismissal of claims that have not been resolved through acceptance of the offers of judgment.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| JOEL VANGEHLUWE, et al., | Case No.: 2:18-cv-10542-LJM-EAS |
| Plaintiffs, | Hon. Laurie J. Michelson |
| v. | Mag. Elizabeth A. Stafford |
| GOTNEWS, LLC, *et. al.* | |
| Defendants. | |

RANDAZZA | LEGAL GROUP

## DEFENDANT GOTNEWS, LLC's
## BRIEF IN SUPPORT OF ANTI-SLAPP MOTION
### (Evaluated under Fed. R. Civ. P. 56)

Andrew B. Sommerman
SOMMERMAN, MCCAFFITY
  & QUESADA, L.L.P.
3811 Turtle Creek Blvd., Ste. 1400
Dallas, TX 75219
andrew@textrial.com

Raechel M. Badalamenti
KIRK, HUTH, LANGE
  & BADALAMENTI, PLC
19500 Hall Road, Suite 100
Clinton Township, MI 48038
rbadalamenti@khlblaw.com

*Attorneys for Plaintiffs*
*Joel Vangheluwe & Jerome Vangheluwe*

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Tel: (702) 420-2001
ecf@randazza.com

Herschel P. Fink (Reg. # P13427)
JAFFE RAIT HEUER & WEISS, P.C.
Grand Park Centre Building
28 W. Adams Ave., Suite 1500
Detroit, MI 48226
Tel: (313) 800-6500
hfink@jaffelaw.com

*Attorneys for Defendants*
*GotNews, LLC & Charles C. Johnson*

## **TABLE OF CONTENTS**

1.0   INTRODUCTION ...................................................................................... 1

2.0   FACTUAL BACKGROUND .................................................................. 2

3.0   LEGAL STANDARDS ............................................................................ 5

4.0   ANALYSIS ................................................................................................. 6

   4.1   *Cal. Code Civ. Proc. § 425.16 Applies in Federal Court* ...................... 6

   4.2   *The Court Should Apply the California Anti-SLAPP Statute Here* ........ 6

      4.2.1   Michigan Choice of Law Principles ................................................ 6

      4.2.2   The Restatement Factors Weigh in Favor of Applying California's
              Anti-SLAPP Statute ........................................................................ 7

   4.3   *GotNews Meets its Burden Under the First Prong of the Anti-SLAPP Analysis* .... 10

      4.3.1   Joel Vangheluwe's Claims Arise from GotNews's Speech on a
              Matter of Public Interest ................................................................ 11

   4.4   *Plaintiff Cannot Show a Probability of Prevailing on His Claims* ............. 12

      4.4.1   Joel Vangheluwe Cannot Prevail on His Defamation Claim ................... 13

         4.4.1.1   The Statements Were Not False ................................................. 13

         4.4.1.2   The Statements Were Privileged ................................................. 15

         4.4.1.3   GotNews Did Not Make the Statements With the Requisite
                    Degree of Fault .................................................................... 16

      4.4.2   Joel Vangheluwe Cannot Prevail on His Intentional Infliction of
              Emotional Distress Claim ................................................................ 21

      4.4.3   Joel Vangheluwe Cannot Prevail on His False Light Claim .................... 23

5.0   CONCLUSION ...................................................................................... 24

Defendant GotNews, LLC's Brief in Support of Anti-SLAPP Motion
2:18-cv-10542-LJM-EAS

## CONCISE STATEMENT OF THE ISSUES PRESENTED

Whether the Court should dismiss the instant civil action against Defendant GotNews, LLC, pursuant to Cal. Code. Civ. Proc. § 425.16 on the basis that the action is related to Defendant's right of free speech in regard to a public issue and Plaintiff Joel Vangheluwe cannot establish a probability of prevailing on any claim.

- Plaintiff's Anticipated Response:   "No."
- Defendant's Response:    "Yes."

# INDEX OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................17

*Batzel v. Smith,*
   333 F.3d 1018 (9th Cir. 2003) ................................................ 6

**\* Bedford v. Witte,**
   **318 Mich. App. 60 (2016)** ................................................ **17**

**\* Belser v. James,**
   **2017 U.S. App. LEXIS 23218 (6th Cir. June 6, 2017)** ...................................... **12**

*Biro v. Conde Nast,*
   807 F.3d 541 (2d Cir 2015) ....................................................17

*Black v. Dixie Consumer Prods. LLC,*
   835 F.3d 579 (6th Cir. 2016) ...............................................6,7

*Bonellis v. Volkswagen of America, Inc.,*
   166 Mich. App. 483 (1988) ...................................................7

*Bowers v. Jefferson Pilot Fin. Ins. Co.,*
   219 F.R.D. 578 (E.D. Mich. 2004) .......................................6

*Brudwick v. Minor,*
   2006 US. Dist. LEXIS 51608 (D. Colo. July 13, 2006) ..................................6

**\* Bufalino v. Detroit Magazine, Inc.,**
   **14 Media L. Rep. (BNA) 1597 (Mich. Ct. App. 1987)** ...................................... **19**

*Chi v. Loyola Univ. Med. Ctr.,*
   787 F. Supp. 2d 797 (N.D. Ill. 2011) ...................................9

**\* Chrysler Corp. v. Skyline Indus. Servs., Inc.,**
   **448 Mich. 113 (1995)** ...................................................... **6**

*Church of Scientology v. Wollersheim,*
   42 Cal. App. 4th 628, 650 (1996) .....................................10

*Comerica Bank-California v. Sierra Sales, Inc.,*
   1994 U.S. Dist. LEXIS 21542 (N.D. Cal. Sept. 30, 1994) ..................................8

*Coretronic Corp. v. Cozen O'Connor*,
192 Cal. App. 4th 1381 (2d Dist. 2011) ...................................................... 10

*Curtis Pub. v. Butts*,
388 U.S. 130 (1967) ........................................................................................ 18

***\* Detroit Free Press, Inc. v. Oakland Cty. Sheriff*,**
**164 Mich. App. 656 (1987) ..................................................................... 24**

*Diamond Ranch Acad. v. Filer*,
117 F. Supp. 3d 1313 (D. Utah 2015) ..................................................... 5, 9

*Dombrowski v. Pfister*,
380 U.S. 479 (1965) ......................................................................................... 5

*DuPuis v. City of Hamtramck*,
502 F. Supp. 2d 654 (E.D. Mich. 2007) ............................... 14, 15, 16, 21

***\* Duran v Detroit News, Inc.*,**
**200 Mich. App. 622 (1993) ..................................................................... 23**

***\* Early Detection Ctr., Prof'l Corp. v. N.Y. Life Ins. Co.*,**
**157 Mich. App. 618 (1986) ..................................................................... 22**

*Fishbach-Natkin, Inc. v. Shimizu Am. Corp.*,
854 F. Supp. 1294 (E.D. Mich. 1994) ...................................................... 17

***\* Fisher v. Detroit Free Press*,**
**158 Mich. App. 409 (1987) ..................................................................... 14**

*Global RELIEF v. New York Times Co.*,
2002 U.S. Dist. LEXIS 17081 (N.D. Ill. Sept. 11, 2002) ...................... 5, 7, 8

*Gonyea v. Motor Parts Fed. Credit Union*,
192 Mich. App. 74 (1991) ........................................................................... 17

*Good Government Group, Inc. v. Superior Court of Los Angeles County*,
22 Cal.3d 672, 586 P.2d 572 (Cal. 1978) .................................................... 5

*Haack v. City of Carson City*, No. 3:11-cv-00353-RAM,
2012 U.S. Dist. LEXIS 120137 (D. Nev. Aug. 22, 2012 ............................ 5

***\* Haverbush v. Powelson*,**
**217 Mich. App. 228 (1996) ..................................................................... 23**

RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

**\* *Hawthorne-Burdine v. Freedman*,**
**2018 Mich. App. LEXIS 1684 (Ct. App. Apr. 19, 2018) ................................... 17**

*Hilton v. Hallmark Cards*,
599 F. 3d 894 (9th Cir. 2009) ...................................................................10

**\* *Howe v. Detroit Free Press, Inc.*,**
**219 Mich. App. 150 (1996) ..................................................................20**

**\* *Hustler Magazine, Inc. v. Falwell*,**
**485 U.S. 46 (1985)............................................................................ 13**

*In re Disaster at Detroit Metro. Airport*,
750 F. Supp. 793 (E.D. Mich. 1989) .....................................................6, 7

**\* *Ireland v. Edwards*,**
**230 Mich. App. 607 (1998) ................................................................. 13**

**\* *Klaxon Co. v. Stentor Electric Mfg. Co.*,**
**313 U.S. 487 (1942) .............................................................................6**

*Koniak v. Heritage Newspapers*,
198 Mich. App. 577, 499 N.W.2d 346 (1993) ........................................ 15, 16

*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*,
37 Cal. App. 4th 855 (1st Dist. 1995) ........................................................9

**\* *Lakeshore Community Hospital v. Perry*,**
**212 Mich. App. 396 (1995) ................................................................. 13**

*Las Vegas Sands Corp. v. First Cagayan Leisure & Resort Corp.*,
No. 2:14-CV-424 JCM (NJK),
2016 U.S. Dist. LEXIS 101028 (D. Nev. Aug. 2, 2016) ..............................5

**\* *Lynch v. Cty. of Arenac*,**
**No. 296775, 2011 Mich. App. LEXIS 1265 (Ct. App. July 12, 2011) ........... 22, 23**

*Makaeff v. Trump Univ., LLC*,
736 F.3d 1180 (9th Cir. 2013) .................................................................9

*Masson v. New Yorker Magazine, Inc.*,
960 F.2d 896 (9th Cir. 1992) ................................................................ 19

*Mayfield v. NASCAR*,
674 F.3d 369 (4th Cir. 2012) ................................................................ 18

Defendant GotNews, LLC's Brief in Support of Anti-SLAPP Motion
2:18-cv-10542-LJM-EAS

*McDonald v. Wise,*
769 F.3d 1202 (10th Cir. 2014) ..................................................................... 18

**\* McIntosh v. Detroit News,**
**2009 Mich. App. LEXIS 128 (Ct. App. Jan. 22, 2009) .................................... 20**

*Mello v. Great Seneca Fin'l Corp.,*
526 F. Supp. 2d 1024 (C.D. Cal. 2007) ........................................................... 12

**\* Melson v. Botas,**
**497 Mich. 1037 (2015) ................................................................................. 21**

*Metabolife Int'l, Inc. v. Wornick,*
264 F.3d 832 (9th Cir. 2001) ........................................................................... 6

**\* Meyer v. Hubbell,**
**117 Mich. App. 699 (1982) .......................................................................... 22**

*Michel v. NYP Holdings, Inc.,*
816 F.3d 686 (11th Cir. 2016) ........................................................................ 17

**\* Mitan v. Campbell,**
**474 Mich. 21 (2005) ..................................................................................... 13**

*Mourad v. Marathon Petro. Co. LP,*
654 Fed. Appx. 792 (6th Cir. 2016) ................................................................ 17

*Mullen v. Meredith Corp.,*
271 Ore. App. 698 (D. Ore. 2014) ................................................................. 11

*New York Times v. Sullivan,*
376 U.S. 254, 280 (1964) ................................................................................ 17

*Nichols v. Moore,*
396 F. Supp. 2d 783 (E.D. Mich. 2005) .............................................. 13, 15, 19

**\* Northland Wheels Roller Skating Ctr. v. Detroit Free Press,**
**213 Mich. App. 317 (1995) .................................................................... 14, 15**

**\* Nygard, Inc. v. Uusi-Kerttula,**
**159 Cal. App. 4th 1027 (2008) ..................................................................... 10**

**\* Olmstead v. Anderson,**
**428 Mich. 1 (1987) ........................................................................................ 7**

*Ousterhout v. Zukowski,*
  2012 U.S. Dist. LEXIS 190544 (N.D. Ill. Sept. 13, 2012) ............................ 9

*Park W. Galleries, Inc. v. Hochman,*
  No. 08-12247, 2009 U.S. Dist. LEXIS 66997 (E.D. Mich. Aug. 3, 2009) ................ 16

*Pippen v. NBCUniversal Media, LLC,*
  734 F.3d 610 (7th Cir. 2013) .............................................. 18

*Rogers v. Home Shopping Netwk., Inc.,*
  57 F. Supp. 2d 973 (C.D. Cal. 1999) ....................................... 5

*Rouch v. Enquirer & News,*
  427 Mich. 157 (1986) .................................................... 17

**\* Sarkar v Doe,**
  **318 Mich App 156 (2016)** .............................................. **14**

*Sarver v. Chartier,*
  813 F.3d 891 (9th Cir. 2016) .............................................. 6

*Schatz v. Republican State Leadership Comm.,*
  669 F.3d 50 (1st Cir. 2012) ............................................... 18

*Seelig v. Infinity Broadcasting Corp.,*
  97 Cal. App. 4th 798 (1st Dist. 2002) ...................................... 11

*Sharif v. Sharif,*
  2010 U.S. Dist. LEXIS 86853 (E.D. Mich. Aug. 24, 2010) ..................... 8

**\* Sutter v. Biggs,**
  **377 Mich. 80 (1966)** .................................................. **24**

*Tamkin v. CBS Broadcasting, Inc.,*
  193 Cal. App. 4th 133 (1st Dist. 2011) .................................... 11

*Taus v. Loftus,*
  40 Cal. 4th 683 (2007) ................................................... 10

*Taylor v. Viacom Inc.,*
  2018 U.S. Dist. LEXIS 95391 (C.D. Cal. June 5, 2018) ...................... 12

*Thomas v. Fry's Elecs., Inc.,*
  400 F.3d 1206 (9th Cir. 2005) ............................................ 6

RANDAZZA | LEGAL GROUP

* *Time, Inc. v. Hill,*
385 U.S. 374 (1967) ..................................................................... 18

*Times-Mirror Co. v. Superior Court,*
198 Cal. App. 3d 1420 (1988) ...................................................... 11

* *Weeren v. Evening News Asso.,*
379 Mich. 475 (1967) .................................................................. 18


**STATUTES**

* **Cal. Code Civ. Proc. § 425.16** ...........................................2, 6, 10, 12

* **M.C.L. § 600.2911** .................................................... 15, 18, 21

Ohio Rev. Code Ann. § 4503.182 ...............................................21


**OTHER AUTHORITIES**

1 Restatement Torts, 2d, § 46 .................................................. 22, 23

3 Restatement Torts, 2d, § 652E, ...............................................24

* **Restatement (Second) of Conflicts of Laws** ...................................7


**RULES**

Fed. R. Civ. P. 12 .....................................................................17

Fed. R. Civ. P. 56 ...................................................................5, 12

\* Denotes controlling or most appropriate authority for the relief sought.  LR 7.1(d)(2).

## 1.0    INTRODUCTION

Defendant GotNews is a news site.  Like all news outlets, it is expected to report on breaking news stories as soon as credible facts come in.  In a "hot news" situation, a certain amount of error must be expected.  Michigan law gives a reasonable berth to such error.  Without such latitude, there would be a strong chilling effect on breaking news, harming the public.  Michigan law mitigates that chilling effect, bolstering freedom of the press over predatory lawsuits.  Despite this latitude, GotNews responsibly issues retractions when it detects such errors.  And, that is precisely what happened here.  In fact, GotNews recognized its honest mistake quickly and issued a retraction *months* before the Plaintiff even sent a letter demanding it.

The facts are as follows:  During a now-infamous rally in Charlottesville, Virginia on August 12, 2017, a man drove a car into a crowd.  Several people were injured, and a young woman, Heather Heyer, died.  There was immediate public outrage, clamoring for the killer's identity.  The 4Chan.org message board has many members who are uncannily good researchers.[2]  After the Charlottesville incident, the 4Chan community performed a vehicle records search for the car used in the assault.  They found public records showing the car belonged to Plaintiff Jerome Vangheluwe.

---

[2]    For example, actor Shia LaBoef put up a flag with the words "He Will Not Divide Us."  He did not disclose the location.  However, he put a webcam on the flag, to show everyone that it waved constantly.  Only the flag and a small square of sky behind it were visible.  4Chan users looked at the trails left by commercial aircraft, determined the angles of intersecting flight paths, and used public databases to determine where the precise angle of intersection could be.  Shortly thereafter, 4Chan users captured the flag.  *See* Mack Lamoureux, "How 4Chan's Worst Trolls Pulled Off the Heist of the Century," VICE (Mar. 11, 2017), attached as **Exhibit 1**, and available at <https://www.vice.com/en_us/article/d7eddj/4chan-does-first-good-thing-pulls-off-the-heist-of-the-century1> (last accessed June 25, 2018).

Armed with that information, a GotNews reporter located Plaintiff Joel Vangheluwe's (Jerome's son) social media postings, bragging it was his car. In addition, Joel seemed to provide a few opinions supporting "open borders" and bragging about his habitual drug use. The reporter logically concluded that Joel was the likely driver of the car at the Rally. Despite this compelling evidence, Joel was not the driver. The moment that GotNews learned this, it immediately issued a retraction and apology.

Three months later, Plaintiffs demanded a retraction. They were either unaware of, or willfully blind to, the fact that the retraction had already issued. Plaintiffs claim it was defamatory for GotNews to have relied on public records in a breaking news scenario where time was of the essence. While nobody would like to be so misidentified, the First Amendment and Michigan law forgive such inaccuracies. The breathing room required to ensure a free and robust press demands such forgiveness.

California's Anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, provides substantive immunity from weak lawsuits aimed at First Amendment protected activity. Such lawsuits are known as Strategic Lawsuits Against Public Participation, or "SLAPP" suits. As a California citizen, GotNews is protected by California's Anti-SLAPP statute; the Court should dismiss Plaintiff Joel Vangheluwe's claims against GotNews with prejudice and award GotNews its attorneys' fees and costs.

## 2.0   FACTUAL BACKGROUND

GotNews, LLC, is a California limited liability company that owns the GotNews.com website. (*See* Dkt. No. 12 at ¶ 42.)[3]   A significant amount of

---

[3]   Defendants GotNews and Mr. Johnson are referred to collectively as "GotNews Defendants."

GotNews.com is devoted to political journalism.  (*See id.* at ¶ 42-43.)   Although Mr. Johnson has worked hard to develop the site, it is not terribly popular, presently ranked as the 249,711th most popular website in the United States.  (*See* **Exhibit 2**.)[4]

On February 14, 2018, Plaintiffs filed a Complaint against GotNews Defendants and others arising from reporting in connection with the Rally.  (Dkt. No. 1.)   On August 11 & 12, 2017, several groups protested in a rally called "Unite the Right" to oppose the removal of a Robert E. Lee statue.  Counter-protesters appeared and a state of emergency was declared, due to "civil unrest" that "caused numerous injuries, damage to local infrastructure, and severe damage to public and private property."  (*See* **Exhibit 3**.)[5]  Against this backdrop, GotNews took interest in the Rally.

At approximately 1:45 p.m. on August 12, 2017, a then-unidentified individual rammed a 2010 Dodge Challenger into a group of counter-protesters, killing Heather Heyer, and injuring 19 others.  (*See* Dkt. No. 12 at ¶ 77.)   The public thirsted for information about the killer.  Images of the crime revealed the car's license plate.  Public records about the car's license plate revealed its VIN.  *See* **Exhibit 4**.[6]  Michigan public records identified Jerome Vangheluwe as the owner of a car with that VIN.

---

[4]    Alexa Ranking of <gotnews.com>, available at: <https://www.alexa.com/siteinfo/gotnews.com> (last accessed June 25, 2018).
[5]    Executive Order 66 (Va. 2017), available at <https://web.archive.org/web/20180111095618/http://governor.virginia.gov/media/9419/eo-66-declaration-of-a-state-of-emergency-for-the-commonwealth-of-virginia-due-to-civil-unrest.pdf> (last accessed June 25, 2018).
[6]    Image posted to 4Chan.org, available at: <https://img.4plebs.org/boards/pol/image/1502/56/1502566003460.png> (last accessed June 25, 2018); OPLATES is the official website of the Ohio Bureau of Motor Vehicles.

*See* **Exhibit 5**;[7] *see also* **Exhibit 6**.[8]  Joel Vangheluwe's social media posts showed him as the operator of the car.[9]  *See* Dkt. No. 12-1.  They also revealed Joel's political views and personal habits.  *See id.*

Plaintiffs allege Defendants published an article entitled "BREAKING: #Charlottesville Car Terrorist Is Anti-Trump, Open Borders Druggie" with a subheading "Evidence indicates a left-winger mowed down antifa counter-protestors in Charlottesville, not a right-winger or white nationalist, GotNews can exclusively reveal."  (Dkt. No. 12 at ¶ 80; Dkt. No. 12-1.)  The article relied on the public records and Joel's statements, accurately stating:

> License plate searches of the 2010 Dodge Challenger that killed one and injured nearly 20 in Charlottesville found that the vehicle was registered to a Jerome Vangheluwe of Michigan.  A Facebook crawl of his relatives reveals the car was in the possession of his son, Joel.

(Dkt. No. 12 at ¶ 81; Dkt. No. 12-1.)  Jerome admits he owned the Challenger.  (Dkt. No. 12 at ¶ 107.)  Even as of May 2018, the Michigan Bureau of Driver and Vehicle Records reports him as the owner.  (*See* **Exhibit 6**.)  Joel was the primary operator when Jerome owned it.  The GotNews article otherwise consists of reproductions of Joel's social media posts with opinion.  Those posts included Joel's hashtag "#stoned" and his comments like "I'm stoned."[10]  (Dkt. No. 12-1.)  Thus, the article commented "Joel

---

[7]  Image posted to 4Chan.org, available at: <https://img.4plebs.org/boards/pol/image/1502/56/1502565446102.png> (last accessed June 25, 2018).
[8]  Michigan Department of State, Bureau of Driver and Vehicle Records, Certified Record Lookup Report.
[9]  Ultimately, authorities identified the motorist as James Alex Fields, Jr., of Maumee, Ohio, and a grand jury charged him with, *inter alia*, first-degree murder.  *See Virginia v. Fields,* Case No. CR17000296-01 (Charlottesville City Ct., Va., filed Dec. 18, 2017); *see also* Dkt. No. 12 at ¶ 78.
[10]  Despite bragging on social media when he was (frequently) under the influence of drugs, Plaintiff takes great offense with the opinion he was a "druggie."

RANDAZZA | LEGAL GROUP

likes taking drugs and getting stoned, a look at his social media shows." Dkt. No. 12 at ¶ 82 and Dkt. No. 12-1.)  It also asked, based on disclosed facts, "What [sic] he under the influence when he crashed into the crowd at Charlottesville?"  *Id.*  Later that day, August 12, 2017, the police identified James Fields as their suspect. GotNews immediately published a retraction.  (*See* Dkt. No. 24-1.)

## 3.0   LEGAL STANDARDS

Federal courts treat Anti-SLAPP motions as motions for summary judgment. *See Haack v. City of Carson City*, 2012 U.S. Dist. LEXIS 120137, at *9 (D. Nev. Aug. 22, 2012); *Las Vegas Sands Corp. v. First Cagayan Leisure & Resort Corp.*, 2016 U.S. Dist. LEXIS 101028, at *6 (D. Nev. Aug. 2, 2016) (stating "[a]lthough called a 'motion to dismiss,' anti-SLAPP motions are treated like motions for summary judgment"); *Rogers v. Home Shopping Netwk., Inc.*, 57 F. Supp. 2d 973 (C.D. Cal. 1999) (same); *Diamond Ranch Acad. v. Filer*, 117 F. Supp. 3d 1313, 1324 (D. Utah 2015) (applying California Anti-SLAPP law when defendant was from California); *and see Global RELIEF v. New York Times Co.*, 2002 U.S. Dist. LEXIS 17081 (N.D. Ill. Sept. 11, 2002) (finding that California Anti-SLAPP defense should be considered).

Whether under the Anti-SLAPP statute or Fed. R. Civ. P. 56, courts should dispose of meritless cases implicating protected speech early.  "[B]ecause unnecessarily protracted litigation would have a chilling effect upon the exercise of First Amendment rights, speedy resolution of cases involving free speech is desirable."  *Good Government Group, Inc. v. Superior Court of Los Angeles County*, 22 Cal.3d 672, 685, 586 P.2d 572, 578 (Cal. 1978) *citing Dombrowski v. Pfister*, 380 U.S. 479, 486-487 (1965).  Pre-trial dismissal is particularly appropriate in cases involving free speech rights.  "Were not summary

judgment granted in proper cases, the threat of protracted litigation might have a chilling effect upon the full and free exercise of the First Amendment ….” *Brudwick v. Minor*, 2006 US. Dist. LEXIS 51608, *63 (D. Colo. July 13, 2006) (citations omitted).

## 4.0   ANALYSIS

### 4.1   Cal. Code Civ. Proc. § 425.16 Applies in Federal Court

California’s Anti-SLAPP statute provides a substantive immunity from SLAPP suits, as well as a substantive entitlement to attorneys’ fees, both of which apply in federal court. *See Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003); *see also Thomas v. Fry’s Elecs., Inc.*, 400 F.3d 1206, 1207 (9th Cir. 2005).[11]  The Sixth Circuit cited approvingly to Federal cases applying the California law.  *See Black v. Dixie Consumer Prods. LLC*, 835 F.3d 579, 584 (6th Cir. 2016).  Thus, this motion may be considered.

### 4.2   The Court Should Apply the California Anti-SLAPP Statute Here

#### 4.2.1  Michigan Choice of Law Principles

In diversity cases, federal courts use the choice of law principles of the forum state. *See In re Disaster at Detroit Metro. Airport*, 750 F. Supp. 793, 797 (E.D. Mich. 1989) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1942)).  Michigan courts use the “most significant relationship” test, as articulated in the Restatement (Second) of Conflict of Laws.  *See Bowers v. Jefferson Pilot Fin. Ins. Co.*, 219 F.R.D. 578, 582 (E.D. Mich. 2004) (citing *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 125 (1995)).

---

[11]   In contrast, the procedural portions of the statute do not apply.  For example, the 60-day deadline for filing such motions does not apply.  *See Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016).  The statute’s stay of discovery also does not apply in federal court.  *See Metabolife Int’l, Inc. v. Wornick*, 264 F.3d 832, 845-46 (9th Cir. 2001).

This analysis is necessary where "the substance of the relevant state laws differ or conflict." *In re Detroit Metro*, 750 F. Supp. at 796.

Michigan recognizes *dépeçage*, by which a court will apply a choice of law analysis on an issue-by-issue basis, rather than applying a given state's laws to the entire dispute. *See id*; *see also Olmstead v. Anderson*, 428 Mich. 1, 4 (1987); *and see Bonellis v. Volkswagen of America, Inc.*, 166 Mich. App. 483, 508 n.6 (1988). Here, even if Michigan law governs the claims, California's significant interest in ensuring the free speech rights of its citizens is furthered by application of California's Anti-SLAPP statute; Michigan lacks a comparable, competing interest. This court would not be blazing new ground by applying it. *See Black v. Dixie Consumer Prods. LLC*, 835 F.3d at 584; *Global RELIEF v. New York Times Co.*, 2002 U.S. Dist. LEXIS 17081 (N.D. Ill. Sept. 11, 2002).

### 4.2.2 The Restatement Factors Weigh in Favor of Applying California's Anti-SLAPP Statute

General "most significant relationship" principles are applied to determine which forum's law to apply. *See* Restatement (Second) of Conflicts of Laws at §§ 150, 153. In tort, the location of injury determines governing law unless another state has a more significant relationship. *See id.* at § 146. The Restatement's factors are: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. *Id.* at § 6. Factors (b), (c), and (e) are of greatest

concern here.  California's Anti-SLAPP statute is not so specialized or arcane that this Court will be unable to apply it effectively.  In fact, this Court has previously viewed out-of-state Anti-SLAPP laws favorably, even where the forum state's law of defamation applied.  *See Sharif v. Sharif*, 2010 U.S. Dist. LEXIS 86853 (E.D. Mich. Aug. 24, 2010); *see also Global Relief v. New York Times Co.*, 2002 U.S. Dist. LEXIS 17081 (N.D. Ill. Sept. 11, 2002).  Joel has no justified expectation in depriving GotNews of the protections of California's Anti-SLAPP statute, most namely, its immunity from suit and fee-shifting provisions; to find otherwise would encourage forum shopping.[12]

The most comparable case in this District is *Sharif v. Sharif*, 2010 U.S. Dist. LEXIS 86853 (E.D. Mich. Aug. 24, 2010).  In *Sharif*, the defendant wrote an allegedly defamatory book in Indiana, where the book was published in Indiana, and where the Court found, in passing its Anti-SLAPP statute, "Indiana has an interest in protecting its citizens."  *Id.* at * 10-11.  This sufficiently showed that Indiana had an interest in having its Anti-SLAPP law applied.  *See id.* at *11.  Thus, the Court found it was appropriate to allow the defendant to use the statute as a defense.  *See id.* at *12.

Similarly, Joel is a Michigan resident, but it is proper to apply California's Anti-SLAPP statute to California Defendants.  California has a substantial interest in how its substantive immunities apply to its citizens.  GotNews is a California entity and the

---

[12]  Notably, for reasons set forth by other defendants, GotNews is not properly subject to personal jurisdiction in this Court.  GotNews was fraudulently induced to Michigan for the purposes of mediation and was served during that mediation, invalidating the service.  *See Comerica Bank-California v. Sierra Sales, Inc.*, 1994 U.S. Dist. LEXIS 21542, at *3 (N.D. Cal. Sept. 30, 1994).  And, in fact, the served summons was invalid, having been returned unexecuted (Dkt. No. 8); unlike with other defendants, Plaintiffs did not seek an alias or second summons with which to serve GotNews.  *Compare* Dkt. No. 19.  GotNews, thus, should not be deprived of its California statutory immunity simply because Plaintiff improperly filed suit in Michigan.

article was published as part of the operations of a California business.  Media entities like GotNews are the "prime beneficiaries" of the statute.  *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, 37 Cal. App. 4th 855, 863 (1st Dist. 1995).  The place of injury is of little importance in a choice of law analysis involving an Anti-SLAPP statute.  *See Diamond Ranch Acad.*, 117 F. Supp. at 1324 (applying California Anti-SLAPP statute where "[defendant's] California residence, California's strong interest in protecting its citizens' free speech activities, and the court's conclusion that the record, fairly construed, shows that much of the speech likely originated in California, all weigh strongly in favor of applying California's … anti-SLAPP law"); *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 803 (N.D. Ill. 2011) (Illinois had a strong interest in applying its statute to its citizens where speech originated in Illinois, even though plaintiff's alleged harm occurred in Arizona); *see also Ousterhout v. Zukowski*, 2012 U.S. Dist. LEXIS 190544, *5-6 (N.D. Ill. Sept. 13, 2012) (applying Tennessee statute where speaker was located in Tennessee but plaintiff, and alleged harm, was in California, as Tennessee had more substantial relationship).

As with the statute in *Sharif*, California's anti-SLAPP statute seeks to limit weak suits brought against the valid use of First Amendment rights.  *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1183 (9th Cir. 2013).  California's statute creates substantive rights of (1) immunity to claims based on protected activity early in a case; and (2) entitlement to attorneys' fees if the moving party prevails on an Anti-SLAPP motion.  *See id.*  Michigan, on the other hand, has no competing state policy or statute.  Although the speech was about a Michigan resident, it was not targeted to Michigan

any more than it was to Virginia, where the Rally occurred.  Thus, California's interest in protecting its speakers is paramount.

### 4.3 GotNews Meets its Burden Under the First Prong of the Anti-SLAPP Analysis

Under Cal. Code Civ. Proc. § 425.16(b)(1), "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike …."[13]  The term "issue of public interest" for Anti-SLAPP purposes is defined broadly as "any issue in which the public is interested." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008).  "The issue need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest." *Id.*  "Although matters of public interest include legislative and governmental activities, they may also include activities that involve private persons and entities …." *See Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 650 (1996) (emphasis added).  An activity does not need to "meet the lofty standard of pertaining to the heart of self-government" to qualify for Anti-SLAPP protection; "social or even low-brow topics may suffice." *Hilton v. Hallmark Cards*, 599 F. 3d 894, 905 (9th Cir. 2009).  A radio discussion about a reality television show and the creation of a CSI episode **were** matters of public interest for Anti-SLAPP purposes.  *See Seelig v. Infinity Broadcasting Corp.*, 97 Cal. App. 4th 798,

---

[13]   The merits of a plaintiff's claims, and the legality of the defendant's actions, are not the focus of the first prong analysis and, if relevant, should only be considered during the second prong analysis.  *See Coretronic Corp. v. Cozen O'Connor*, 192 Cal. App. 4th 1381, 1388 (2d Dist. 2011); *see also Taus v. Loftus*, 40 Cal. 4th 683, 706-07, 713, 727-29 (2007).

807 (1st Dist. 2002); *see also Tamkin v. CBS Broadcasting, Inc.*, 193 Cal. App. 4th 133, 144 (1st Dist. 2011).  Reports of crime are issues of public interest.  *See, e.g., Mullen v. Meredith Corp.*, 271 Ore. App. 698, 707 (D. Ore. 2014) (finding that a news report of a neighborhood shooting "constitute[s] an issue of public interest"); *see also Times-Mirror Co. v. Superior Court*, 198 Cal. App. 3d 1420, 1428 (1988) (stating that "[t]ruthful reports of recent crimes are of public interest and generally protected by the First Amendment").

### 4.3.1  Joel Vangheluwe's Claims Arise from GotNews's Speech on a Matter of Public Interest

Joel's claims are based upon a GotNews article published in the immediate aftermath of an act of vehicular homicide that killed Heather Heyer and injured several other people.  This violent act occurred during the infamous "Unite the Right" rally in Charlottesville, Virginia.  (*See* Dkt. No. 12 at ¶ 77.)  There was nationwide coverage of the multi-day event both before and after the fatal incident on August 12, 2017.  (*See* **Exhibit 7**;[14] **Exhibit 8**;[15] **Exhibit 9**;[16] *and see* **Exhibit 10**.)[17]

---

[14]  Sarah Tony and Charles Ventura, "Federal judge allows 'alt-right' rally to go ahead as planned," USA TODAY (Aug. 11, 2017), available at: <https://www.usatoday.com/story/news/2017/08/11/charlottesville-braces-itself-yet-another-white-nationalist-rally-saturday/560829001/> (last accessed Jun. 25, 2018.)

[15]  Meghan Moriarty, "Virginia National Guard on Standby for Unite the Right Rally," WVIR-TV NBC29 NEWS (Aug. 11, 2017), available at: <http://www.nbc29.com/story/36117768/virginia-national-guard-on-standby-for-unite-the-right-rally> (last accessed Jun. 25, 2018.)

[16]  Hawes Spencer and Sheryl Gay Stolberg, "White Nationalists March on University of Virginia," THE NEW YORK TIMES (Aug. 11, 2017), available at: <https://www.nytimes.com/2017/08/11/us/white-nationalists-rally-charlottesville-virginia.html> (last accessed Jun. 26, 2018.)

[17]  "Charlottesville white nationalist rally blamed for 3 deaths, dozens of injuries," FOX NEWS (Aug. 12, 2017), available at: <http://www.foxnews.com/us/2017/08/12/

Once news broke of the homicide, there was a nationwide dash to learn as much as possible about the crime. *See, e.g.,* **Exhibit 11**.[18]  GotNews was involved in the same investigatory process as major outlets to break the killer's identity.  The events of the Rally, and the identity of the killer, were matters of paramount public interest at the time GotNews published its article.  Joel's claims all premise liability on the article.  Accordingly, the claims arise from GotNews's protected activity of reporting on a matter of widespread public interest, satisfying the first prong.

### 4.4    Plaintiff Cannot Show a Probability of Prevailing on His Claims

Once the moving party satisfies its burden under the first prong, the burden shifts to the non-moving party to show that he has a probability of prevailing on his claims.  *See* Cal. Code Civ. Proc. § 425.16(b)(1); *Mello v. Great Seneca Fin'l Corp.*, 526 F. Supp. 2d 1024, 1029 (C.D. Cal. 2007).  The non-moving party must state a legally sufficient claim, substantiated by admissible evidence.  *See Taylor v. Viacom Inc.*, 2018 U.S. Dist. LEXIS 95391, at *14 (C.D. Cal. June 5, 2018); *accord Belser v. James*, 2017 U.S. App. LEXIS 23218, at *5 (6th Cir. June 6, 2017) ("generalized statements are insufficient to create a genuine dispute of material fact" under Fed. R. Civ. P. 56(c)).[19]

Joel continues to bring three claims against GotNews: (1) defamation; (2) intentional infliction of emotional distress; and (3) false light.  (*See* Dkt. No. 12 at

---

emergency-declared-ahead-unite-right-rally-in-virginia.html> (last accessed Jun. 26, 2018.)

[18]   Justin T. Westbrook, "Horrifying Video Shows Dodge Challenger Plow Into Crowd Of Protesters In Charlottesville (Update)", JALOPNIK (Aug. 12, 2017), available at:    <https://jalopnik.com/disturbing-video-shows-dodge-challenger-plow-into-crowd-1797782607> (last accessed Jun. 25, 2018.)

[19]   Even if the Court does not apply the California Anti-SLAPP statute, Defendant is entitled to summary judgment for the reasons set forth herein.

44-47.).   Joel's IIED and false light claim are derivative of his defamation claim and GotNews is protected from those claims to the same extent.   *See Nichols v. Moore*, 396 F. Supp. 2d 783, 798 (E.D. Mich. 2005) (finding that "plaintiff's false light and invasion of privacy and emotional distress claims are subject to the same First Amendment limitations as plaintiff's defamation claim"); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1985) (IIED claim was governed by First Amendment law principles).   The defenses to the defamation claim also protect against the derivative causes.   *See Ireland v. Edwards*, 230 Mich. App. 607, 624-25 (1998) (stating that "limitations on actionability [of claims of defamation] … are First Amendment limitations.  It is clear that those limitations are not exclusive to defamation claims").   Thus, as held in *Lakeshore Community Hospital v. Perry*, "[a]s with defamation actions, where the conduct allegedly causing the business interference is a defendant's utterance of negative statements concerning a plaintiff, privileged speech is a defense."  212 Mich. App. 396, 401-02 (1995).

### 4.4.1   Joel Vangheluwe Cannot Prevail on His Defamation Claim

In Michigan, "[t]he elements of a defamation claim are: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by publication."  *Mitan v. Campbell*, 474 Mich. 21, 24 (2005).

#### 4.4.1.1   The Statements Were Not False

Joel asserts that the first element is met by "Defendants' accusations that the Vangheluwes were involved in the commission of a terror attack."  (Dkt. No. 12 at

¶ 116).  This is insufficient.  "A plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory[.]"  *Sarkar v. Doe*, 318 Mich App 156, 179 n 13 (2016).

Joel must prove falsity.  *See Northland Wheels Roller Skating Ctr. v. Detroit Free Press*, 213 Mich. App. 317, 323 (1995) ("In cases involving a private plaintiff, a defendant that is a member of the news media, and a publication regarding an area of public concern, the constitution requires that the plaintiff bear the burden of proving falsity"); *DuPuis v. City of Hamtramck*, 502 F. Supp. 2d 654, 658 (E.D. Mich. 2007) ("as long as the publication refers to a matter of public concern, it must be 'provable as false' before any liability may be accessed under a state defamation claim.").  The article is accurate or substantially true.  *See Fisher v. Detroit Free Press,* 158 Mich. App. 409 (1987) ("If the gist, the sting, of the article is substantially true, the defendant is not liable.").

**First:** "License plate searches of the 2010 Dodge Challenger that killed one and injured nearly 20 in Charlottesville found that the vehicle was registered to a Jerome Vangheluwe of Michigan."  **This is true**.  The searches found his ownership, even though the public records were incorrect.  In fact, the Michigan records still show that Jerome Vangheluwe remains the owner of the Challenger.  (*See* **Exhibit 6**.)

**Second**: "A Facebook crawl of his relatives reveals the car was in the possession of his son, Joel."  Once more, this is true — the Facebook searches did reveal Joel as the primary operator when Jerome owned the vehicle.  (*See* Dkt. No. 12-1.)

**Third**: "BREAKING: #Charlottesville Car Terrorist Is Anti-Trump, Open Borders Druggie" with a subheading: "Evidence indicates a left-winger mowed down antifa counter-protestors in Charlottesville, not a right-winger or white nationalist,

GotNews can exclusively reveal."  The evidence in the article demonstrates the accuracy of each representation – to the extent they are not mere opinions.  (*See* Dkt. No. 12-1.)  After all, one man's "druggie" is another man's "stoner," is another man's "Snoop Dogg disciple."  These statements are either true or are of such indefinite definition that they can not support a defamation claim.

### 4.4.1.2    The Statements Were Privileged

Joel Vangheluwe cannot meet the second element; the statements enjoy statutory privilege.  Under Mich. Comp. Laws § 600.2911(3), "fair and true report[s] of matters of public record … or of a … record generally available to the public" precludes damages for libel based on the publication thereof.  *See Northland Wheels Roller Skating Ctr.*, 213 Mich. App. at 326.  A defendant "is not required to consult the public record before making his statements, it is sufficient that the public record is consistent with them."  *Nichols*, 396 F. Supp. 2d at 789.  GotNews made a fair and true report.

The gist and sting of the GotNews article reflected these records, constituting a fair and true report under the statute.  *See Northland Wheels Roller Skating Ctr.*, 213 Mich. App. at 327.  Chief Judge Friedman accurately summarized the law in *DuPuis v. City of Hamtrack,* writing:

> Defendants' statements indeed derived from a "fair and true report," especially since the report need only be "substantially" accurate and not 100% accurate.  *Koniak v. Heritage Newspapers*, 198 Mich. App. 577, 579-580, 499 N.W.2d 346 (1993).  Defendants need not prove they actually relied on, or even consulted, these reports.  It suffices that their statements are consistent with such sources.  Furthermore, DuPuis's argument that M.C.L. § 600.2911(3) requires the broadcast to be attributed to the public source is incorrect.  Nowhere in this statute, or in case law, is it suggested that such a broadcast requires citation to the public record.

502 F. Supp. 2d 654, 657 (E.D. Mich. 2007). GotNews did not merely republish what 4Chan users said, but rather **what the underlying records said**. *Contrast Park W. Galleries, Inc. v. Hochman*, No. 08-12247, 2009 U.S. Dist. LEXIS 66997, at *9 (E.D. Mich. Aug. 3, 2009) (distinguishing that internet article is not a matter of public record). Video of the crash showed Ohio license plates of GVF 1111. Ohio BMV records revealed a VIN of 2B3CJ4DV8AH111921. (*See* **Exhibit 4**.) Additional searches of public records revealed the identity of Jerome. (*See* **Exhibit 5**.) As reported by WDIV, Jerome admitted "that, when he checked into the ownership of the car, apparently, his name was still linked, somehow, to the registration" when "State police pulled that up and saw that he was still connected." (*See* **Exhibit 12**;)[20] And Michigan's records still show that Jerome is the owner. (*See* **Exhibit 6**.) Thus, the GotNews article was a substantially accurate, fair report of those Ohio and Michigan records and the publication of the article was privileged.

### 4.4.1.3   GotNews Did Not Make the Statements With the Requisite Degree of Fault

Although Joel alleges fault at the malice level, with actual knowledge or reason to know of falsity (Dkt. No. 12 at ¶¶ 118 & 120), the allegation is not plausible. The statutory fair report is a qualified privilege. *See Koniak*, 190 Mich. App. at 521. However,

---

[20]   Jermont Terry, "Macomb County man receives death threats after false link to Virginia violence," WDIV-TV (Aug. 12, 2017), available at: <https://www.clickondetroit.com/news/macomb-county-man-receives-death-threats-after-false-link-to-virginia-violence> (last accessed Jun. 26, 2018). A transcript of the relevant portion of the broadcast is attached as **Exhibit 13**. A YouTube video of the broadcast is available at: <https://www.youtube.com/watch?v=HZzLR5T2KkM> (last accessed Jun. 26, 2018). A copy of the broadcast has been preserved, and can be made available to the Court upon request.

though it is styled a "qualified privilege," the only qualification is that the report of the records must be "fair and true"; there is no exception for actual malice. *Bedford v. Witte*, 318 Mich. App. 60, 68 (2016). That is, it need only "substantially represent the public record." *See Hawthorne-Burdine v. Freedman*, 2018 Mich. App. LEXIS 1684, at *8 (Ct. App. Apr. 19, 2018). As GotNews substantially represented the records, the privilege applies.

Even if analyzed as other qualified privileges, a plaintiff must show "actual malice." *See Rouch v. Enquirer & News*, 427 Mich. 157, 175 (1986). Actual malice in Michigan requires "knowledge of [a statement's] falsity or reckless disregard of the truth." *Gonyea v. Motor Parts Fed. Credit Union*, 192 Mich. App. 74, 79 (1991).

The weight of modern, post-*Iqbal*,[21] authority favors early adjudication, without discovery into the Defendants' state of mind.[22] Though most cases on "actual malice" involve public figure status under *New York Times v. Sullivan*, the standard is the same. *Compare* 376 U.S. 254, 280 (1964) (defining "actual malice" as "knowledge that [the statement] was false or with reckless disregard of whether it was false or not"). A failure to plausibly meet that standard demands dismissal. *See Biro v. Conde Nast,* 807 F.3d 541 (2d Cir 2015) (actual malice must be plausible or a case is subject to early dismissal); *Mourad v. Marathon Petro. Co. LP*, 654 Fed. Appx. 792, 798 (6th Cir. 2016) (citing *Biro* with approval). Other Circuit Courts of Appeals concur. *See e.g., Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701-02 (11th Cir. 2016); *Schatz v. Republican State Leadership Comm.*,

---

[21]  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[22]  Although Anti-SLAPP motions are treated as summary judgment, summary judgment motions challenging the sufficiency of a pleading are viewed through the prism of Fed. R. Civ. P. 12(b)(6). *See Fishbach-Natkin, Inc. v. Shimizu Am. Corp.*, 854 F. Supp. 1294, 1303 (E.D. Mich. 1994).

669 F.3d 50, 58 (1st Cir. 2012); *McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir. 2014); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013); *Mayfield v. NASCAR*, 674 F.3d 369, 377 (4th Cir. 2012).

There is no basis to suggest GotNews knew Joel Vangheluwe was not the operator of the vehicle and it immediately retracted the article upon learning otherwise.[23] Plaintiff cannot prove, let alone credibly plead, actual malice where the public records negate knowing falsity or reckless disregard. Joel could not even meet the negligence standard (were that the standard), as GotNews relied upon trusted sources and official records, without indication that those records were unreliable.

The Charlottesville killing constituted "hot news" requiring immediate reporting. Michigan recognizes a qualified hot-news privilege "to disseminate current, topical, immediate news of public interest[.]" *Weeren v. Evening News Asso.*, 379 Mich. 475, 509 (1967). Ordinarily, "the constitutional protections for speech and press preclude the application of [state law] to redress false reports of matters of public interest in the absence of proof that the defendant published the report with knowledge of its falsity or in reckless disregard of the truth." *Time, Inc. v. Hill*, 385 U.S. 374, 387-88 (1967). When news "require[s] immediate dissemination" and the source has given "every indication of being trustworthy and competent," absent a "severe departure from accepted publishing standards[,]" a plaintiff cannot prove ordinary negligence. *Curtis Pub. v. Butts*, 388 U.S. 130, 158-59 (1967).

---

[23] Plaintiffs claim to have demanded a retraction 3 months later, on November 6, 2017, per Mich. Comp. Laws Ann. § 600.2911(b). (*See* Dkt. No. 12 at ¶ 109.) Plaintiffs do not contend that GotNews Defendants failed to make a retraction, or that their retraction on August 12 was in any way inadequate.

There was insufficient time to exhaustively investigate this breaking story; the tight deadline for any story identifying a killer precludes any finding of actual malice or even negligence.  The 4chan group were then deemed trustworthy and competent. Even if they were not, they provided the records they relied upon stemming from the public records maintained by the State of Michigan.  The breaking news required immediate dissemination – and there was no reason to doubt the research or records. Thus, Joel cannot show negligence, let alone actual malice.

GotNews did not originate the information identifying Jerome as an owner of the Challenger.  That information came from public records posted on the 4Chan.org website.  An author or publisher is not negligent in relying on previously published accounts from reasonably reliable sources.  *See Bufalino v. Detroit Magazine, Inc.,* 14 Media L. Rep. (BNA) 1597 (Mich. Ct. App. 1987).   And a book publisher may rely on a newspaper or a magazine that previously published the same or similar material.  *Masson v. New Yorker Magazine, Inc.,* 960 F.2d 896 (9th Cir. 1992); *Nichols v. Moore,* 396 F. Supp. 2d 783 (ED MI 2005), *aff'd* 477 F.3d 396 (6th Cir. 2007) (applying Michigan law). Similarly, 4chan had previously proven itself to be resourceful and accurate.  As discussed above, actor Shia LaBoef sought to protect an art installation, called "He Will Not Divide Us," by only providing a livestream video of a flag with that logo against the sky.  There were no obvious indicia of location.  Yet, a review of flight patterns and star patterns resulted in 4Chan pinpointing the flag in Greeneville, Tennessee, and capturing the flag.  Having proven themselves capable, they became a reputable source.

As recently as February 2018, reporters from ABC News and the Associated Press relied upon 4Chan investigations for sources.[24]  Reporters may now need to be more vigilant, but it was certainly not negligent in August 2017 to rely on the evidence from 4Chan users – especially when those users posted their sources.  These sources, including public records, may have been erroneous, but is not a journalist's responsibility to dig deeper than official records.  *Compare McIntosh v. Detroit News*, 2009 Mich. App. LEXIS 128, at *7 (Ct. App. Jan. 22, 2009) ("the primary question in determining whether the fair reporting privilege applies concerns not the truth of the published statement itself, but whether the statement accurately reports a matter contained in a public record, regardless of the accuracy of the public record.")

GotNews was a media organization "following the pack" on a story essentially disseminated by a wire service and did not need to independently verify 4Chan's reporting.  Michigan adopted the wire service defense in *Howe v. Detroit Free Press, Inc.,* 219 Mich. App. 150, 154 (1996) ("The local media organization does not have a duty ... to independently verify the accuracy of the wire service release.") *aff'd,* 457 Mich. 870 (1998).  Significantly, the defendant newspaper in *Howe* was relying upon information published by a sister newspaper, *The San Jose Mercury News*, and distributed to the defendant Detroit Free Press on an internal company news service.  Reliance on that report was held not to be negligent.  GotNews reproduced the 4Chan story without substantial change and there is no duty to disclose the underlying sources utilized by

---

[24]  *See* Shawn Musgrave, "How white nationalists fooled the media about Florida shooter," POLITICO (Feb. 16, 2018), attached as **Exhibit 14**, and available at <https://www.politico.com/story/2018/02/16/florida-shooting-white-nationalists-415672> (last accessed Jun. 26, 2018).

the wire service.  *See DuPuis*, 502 F. Supp. 2d at 657-58.  As explained above, 4Chan has shown itself to be a reliable source of information in the past, and GotNews was justified in relying on it.[25]  Furthermore, the official public records supported the story.  *See* **Exhibits 4 & 6**.

In order to recover for a communication involving a private individual, Plaintiff must show the communication was published negligently.  *See* M.C.L. § 600.2911(7).  As Defendant did not act negligently, let alone with actual malice, Plaintiff cannot make any recovery.  Further, under Section 600.2911(7), Plaintiff is limited to recovering economic damages.  Although Plaintiff makes general allegations of lost earnings and other pecuniary loss, the only factual allegations of loss speak to Jerome Vangheluwe's business, not Joel's.  *See* Dkt. No. 12 at ¶¶ 108 & 110.  Thus, not only is Defendant not liable to Joel, there are no recoverable damages.

### 4.4.2 Joel Vangheluwe Cannot Prevail on His Intentional Infliction of Emotional Distress Claim

The Michigan Court of Appeals, has established the elements of an IIED claim as "(a) that the defendant engaged in 'extreme and outrageous conduct,' (b) that the defendant intended to cause the plaintiff severe emotional distress or was reckless with regard to whether the plaintiff would suffer such distress, (c) that the defendant's actions actually caused emotional distress, and (d) that the emotional distress was severe." *Melson v. Botas*, 497 Mich. 1037, 1037-38 (2015).

---

[25]  It is expected Plaintiff will assert a duty for GotNews to investigate why a car owned and operated by Michigan residents would be registered in Ohio as reported by the wire service.  *See* Dkt. No. 45 at 31.  No such duty exists.  Moreover, Ohio Rev. Code Ann. § 4503.182(c) permits issuance of a temporary license placard to out-of-state residents; although it may be unusual, so is ramming a car into a crowd.

RANDAZZA | LEGAL GROUP

The Court of Appeals has also recognized, as to the first element, that "[t]he liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities…." *Early Detection Ctr., Prof'l Corp. v. N.Y. Life Ins. Co.*, 157 Mich. App. 618, 626 (1986) quoting 1 Restatement Torts, 2d, § 46, comment d, p. 73. Joel does not specify what, exactly, was the extreme or outrageous conduct. (*See* Dkt. No. 12 at ¶ 126.) Further, "dissemination of [] true information cannot be said to rise to the level of being 'utterly intolerable in a civilized community.'" *Lynch v. Cty. of Arenac*, No. 296775, 2011 Mich. App. LEXIS 1265, at *12 (Ct. App. July 12, 2011). Similarly, as with the fair report privilege, "the circulation of a public document [is] not 'outrageous' or 'extreme' conduct within the meaning of the tort of intentional infliction of emotional distress." *Meyer v. Hubbell*, 117 Mich. App. 699, 708 (1982). Moreover, the fair report privilege negates "extreme and outrageous conduct." *See id.* at 707-08. Thus, as with defamation, since the actual statements made were either mere insults or were true or substantially true, Joel has no probability of prevailing on his IIED claim.

Most notably, as to both the first and second elements, that GotNews immediately published a retraction demonstrates the lack of outrageous conduct or intent to harm. The publication was to inform the public about who the likely motorist was; GotNews was not targeting Plaintiff. It would not be extreme or outrageous to publish similar information about James Fields; the only difference is that the State of Michigan provided erroneous information about the owner, leading to the misidentification of the operator. As a result, Joel cannot satisfy the first two elements.

Joel also cannot prove causation. He claims he began receiving threats, causing a fear for safety. (Dkt. No. 12 at ¶ 108.) Yet, there is no suggestion the threats came

from anyone who learned his identity through the article.  The article did not publish his contact information.  (*See* Dkt. No. 1-2.)  The 4Chan postings, however, did.  If he was threatened, it was not proximately caused by GotNews.  GotNews did not encourage anyone to threaten him, and subsequent threats were not foreseeable.

Further, Joel cannot show severe distress.  "[E]motional distress 'includes all highly unpleasant mental reactions, such as fright, horror, grief, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.'"  *Haverbush v. Powelson*, 217 Mich. App. 228, 235 (1996), quoting 1 Restatement Torts, 2d, § 46, Comment j, p. 77.  "Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed."  *Id.*  Here, the conduct was, at worst, a limited misidentification quickly retracted that same day.  Thus, any distress attributable to GotNews is minimal.

### 4.4.3   Joel Vangheluwe Cannot Prevail on His False Light Claim

To prove false light invasion of privacy, "a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position."  *Duran v. Detroit News, Inc.,* 200 Mich. App. 622, 631-632 (1993).  As with defamation, Joel cannot meet the element of falsity.  "The elements as given in *Duran* are in the conjunctive: the information must be false *and* place the [plaintiff] in a false position."  *Lynch v. Cty. of Arenac*, 2011 Mich. App. LEXIS 1265, at *13 (Ct. App. July 12, 2011) (emphasis added).  Notably, the cause of action itself in the Amended Complaint does not assert what was false.  (*See* Dkt. No. 12 at ¶¶ 131-140.)  Joel does not specifically deny the factual

RANDAZZA | LEGAL GROUP

recitations in the GotNews article. The evidence, including that sourced from public records and his own social media account, shows that Jerome owned the vehicle and Joel had been the primary operator of that vehicle.

It was neither unreasonable nor highly objectionable to publish Plaintiffs' information when the evidence showed Jerome was the owner. This is especially so where the legislature protects such speech under the fair report privilege from claims of defamation. It cannot be unreasonable to publish that which is statutorily protected.

Neither can Joel show that "the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Detroit Free Press, Inc. v. Oakland Cty. Sheriff*, 164 Mich. App. 656, 666 (1987) (citing 3 Restatement Torts, 2d, § 652E, p 394). As discussed above, this is the "actual malice" test that cannot be met.

Further, GotNews is not the one who broadcast the information to the public; the 4Chan users were. Merely retransmitting the information on a minor news outlet is not sufficient to meet the broadcast requirement. Such is akin to the element of proximate causation, a part of every cause in tort. *See Sutter v. Biggs*, 377 Mich. 80, 86 (1966). Although Joel Vangheluwe pleads "humiliation, mortification, embarrassment, sleeplessness and anxiety" (Dkt. No. 12 at ¶ 139), as having been proximately caused by the publication, this alleged harm is not attributable to GotNews any more than to 4Chan. Joel Vangheluwe thus cannot prevail on his false light claim.

## 5.0  CONCLUSION

GotNews published a hot news article on a quickly developing issue of paramount public interest. As happens to all media outlets occasionally, it got its

RANDAZZA | LEGAL GROUP

information wrong. GotNews relied on trustworthy sources and immediately corrected its error once it learned of it. The First Amendment does not allow for liability, and California's Anti-SLAPP statute is meant to ensure that meritless claims such as this do not chill speech. The Court should dismiss all of Joel Vangheluwe's claims against GotNews, with prejudice, and award GotNews its costs and reasonable attorneys' fees incurred in defending itself from these claims, to be sought in a separate motion.

Dated: June 26, 2018  Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC

Herschel P. Fink (Reg. # P13427)
JAFFE RAIT HEUER & WEISS, P.C.

*Attorneys for Defendants GotNews, LLC & Charles C. Johnson*

Case No. 2:18-cv-10542-LJM-EAS

## LR 7.1 CERTIFICATION

Pursuant to LR 7.1(a), I hereby certify that counsel for Plaintiffs and counsel for Defendant GotNews conferred on May 22, 2018 by telephone, in which counsel for Defendant explained the nature of this Motion.  Plaintiffs did not consent to the relief requested herein.

Dated: June 26, 2018                Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC

Herschel P. Fink (Reg. # P13427)
JAFFE RAIT HEUER & WEISS, P.C.

*Attorneys for Defendants*
*GotNews, LLC & Charles C. Johnson*

Case No. 2:18-cv-10542-LJM-EAS

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 26, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

Employee,
Randazza Legal Group, PLLC