# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| Joel Vangheluwe and Jerome Vangheluwe, <br><br> *Plaintiffs*, <br><br> v. <br><br> GotNews, LLC, Freedom Daily, LLC, Charles C. Johnson, Alberto Waisman, Jeffrey Rainforth, Jim Hoft, David Petersen, Jonathan Spiel, Shirley Husar, Eduardo Doitteau, Lita Coulthart-Villanueva, Kenneth Strawn, Patrick Lehnhoff, Beth Eyestone, Lori Twohy, Raechel Hitchye, James Christopher Hastey, Christopher Jones, Connie Comeaux, Gavin McInnes, Richard Weikart, and Paul Nehlen, <br><br> *Defendants*. | Case No. : 2:18-cv-10542-LJM-EAS <br><br> Hon. Laurie J. Michelson <br><br> Mag. Elizabeth A. Stafford |

## PLAINTIFFS' RESPONSE TO DEFENDANT RICHARD WEIKART'S RENEWED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2) AND BRIEF IN SUPPORT

NOW COME Plaintiffs Joel Vangheluwe and Jerome Valgheluwe, by and through Attorney Andrew B. Sommerman of Sommerman, McCaffity & Quesada, LLP, and hereby respond to Defendant Richard Weikart's Renewed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2):

Defendant Richard Weikart availed himself of the jurisdiction of Michigan courts by targeting Michigan citizens who he falsely claimed used a car to commit terrorism.

This Court should deny Defendant Richard Weikart's Renewed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs' request this Court deny Defendant Richard Weikart's Renewed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2).

Respectfully submitted,

SOMMERMAN, McCAFFITY
& QUESADA, L.L.P.

_/s/  *Andrew B. Sommerman*_____
Andrew B. Sommerman*
ATTORNEYS FOR PLAINTIFFS
Texas State Bar No. 18842150
3811 Turtle Creek Boulevard,
Suite 1400
Dallas, Texas  75219
214/720-0720 (Telephone)
214/720-0184 (Facsimile)
andrew@textrial.com

**AND**

KIRK, HUTH, LANGE
& BADALAMENTI, PLC

Raechel M. Badalamenti (P64361)
CO-COUNSEL FOR PLAINTIFFS
19500 Hall Road, Suite 100
Clinton Township, MI  48038
(586) 412-4900    Fax:  (586) 412-4949
Dated:  July 6, 2018          rbadalamenti@khlblaw.com

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| Joel Vangheluwe and Jerome Vangheluwe, *Plaintiffs*, <br><br> v. <br><br> GotNews, LLC, Freedom Daily, LLC, Charles C. Johnson, Alberto Waisman, Jeffrey Rainforth, Jim Hoft, David Petersen, Jonathan Spiel, Shirley Husar, Eduardo Doitteau, Lita Coulthart-Villanueva, Kenneth Strawn, Patrick Lehnhoff, Beth Eyestone, Lori Twohy, Raechel Hitchye, James Christopher Hastey, Christopher Jones, Connie Comeaux, Gavin McInnes, Richard Weikart, and Paul Nehlen, <br><br> *Defendants*. | Case No. : 2:18-cv-10542-LJM-EAS <br><br> Hon. Laurie J. Michelson <br><br> Mag. Elizabeth A. Stafford |

## BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT RICHARD WEIKART'S RENEWED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2)

## I.      CONCISE STATEMENT OF ISSUES PRESENTED

1.      Did Defendant Weikart subject himself to the jurisdiction of this Court

in targeting and identifying Michigan residents as alleged terrorists?

Plaintiffs' answer:  Yes

Weikart's response:   No

## II.   CONTROLLING LEGAL AUTHORITIES

### Cases

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007).8, 9
*Alahverdian v Nemelka*, 2015 WL 5004886 (S.D. Ohio, August 24, 2015).......9, 16
*Am. Greeting Corp. v. Cohn*, 839 F.2d 1164 (6th Cir. 1988)...................8
*Calder* v. Jones, 465 U.S. 783 (1984)..................................9, 11
*Leibman v. Prupes*, No. 2:14-cv-09003-CAS(VBKx), 2015 WL 898454
   (C.D. Cal. Mar. 2, 2015)...........................................13
*Walden v. Fiore*, 571 U.S. 277,  n.9 (2014)..................... 11, 15

### Statutes

Michigan Comp. Law, § 600.75 ..................................... 20, 21

### Rules

Federal Rule of Civil Procedure 12 ...........................................8

## III.   INDEX OF AUTHORITIES

### Cases

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007).8, 9

*Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671(E.D. Mich. 2012)...................21

*Alahverdian v Nemelka*, 2015 WL 5004886 (S.D. Ohio, August 24, 2015).......9, 16

*Am. Greeting Corp. v. Cohn*, 839 F.2d 1164 (6th Cir. 1988)....................................8

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)...........8

*Bagsby v. Gehres*, 195 F.Supp.2d 957 (E.D. Mich. 2002) .....................................21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929
   (2007)......................................................................................................................8

*Binion v. O'Neal*, 95 F. Supp. 3d 1055 (E.D. Mich. 2015) ....................................14

*Calder* v. Jones, 465 U.S. 783 (1984).................................................................9, 11

*Cisco Sys. Inc. v. STMicroelectronics Inc.*, No. 5:14-CV-03236-RMW,
   2015 WL 5138556 (N.D. Cal. Sept. 1, 2015)....................................................13

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) .................................13

*Hyperbaric Options, LLC. v. Oxy Health LLC.* 12-12020 2013 WL 5449959
   (E.D.Mich. Sept. 30, 2013)................................................................................20

*Leibman v. Prupes*, No. 2:14-cv-09003-CAS(VBKx), 2015 WL 898454
   (C.D. Cal. Mar. 2, 2015).....................................................................................13

*Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001) ......................................................17

*Revision Military, Inc. v. Balboa Mfg. Co.*, No. 5:11-CV-149, 2011 U.S. Dist.
   LEXIS 98801, 2011 WL 3875624 (D. Vt. Aug. 31, 2011) .................................15

*Rice v. Karsch*, 154 Fed. Appx. 454 (6th Cir. 2005) ..............................................17

*Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*, No., C13-1347-JCC 2014 U.S. Dist.
   LEXIS 161497, 2014 WL 5880170 (W.D. Wash. Sept. 30, 2014).....................13

*Sanders v. Sennholz*, Case No. 17-10578, 2017 WL 3215207 (E.D. Mich.
   July 28, 2017)................................................................................................ 18, 19

*Tanya Gersh v. Andrew Anglin,*  Case No. 9:17-cv-00050-DLC-JLC ....................9

*Thompson v. Moore*, No. 5:09CV2033, 2009 WL 3378242 (N.D. Ohio
   Oct. 15, 2009) ....................................................................................................12

*Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15 (D.D.C. 2017)................16

*Walden v. Fiore*, 571 U.S. 277,  n.9 (2014)..................................................... 11, 15

**Statutes**

28 U.S.C. § 1332 .................................................................................................9

Michigan Comp. Law, § 600.75 ..................................................................... 20, 21

**Rules**

Federal Rule of Civil Procedure 12 ............................................................................8

# IV.   ARGUMENT & AUTHORITIES

## A. Summary of the Argument.

Defendant claims that because he made defamatory statements on his social media account about a citizen of Michigan who Defendant identified, this Court has no jurisdiction.   Defendant ignores the fact that his words and conduct (1) specifically intended to identify Plaintiffs as Michigan residents, and (2) acted as a call to action of others.

In the context of a Rule 12(b)(2) motion, a plaintiff bears the burden of establishing the existence of jurisdiction. [1]  *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). If the Court finds there is no need for an evidentiary hearing, meaning that the written submissions have not raised issues of credibility or disputed issues of fact which require resolution, then a court rules on the written submissions. *Id. See also Am. Greeting Corp. v. Cohn*, 839 F.2d 1164, 1168-69 (6th Cir. 1988).  When a court resolves the motion on written submissions and affidavits, the burden on the plaintiffs is "relatively slight."  *Air Prods. &*

---

[1] A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Controls, Inc.*, 503 F.3d at 549.   The plaintiff only needs to make a *prima facie*

showing that personal jurisdiction exists to defeat dismissal. *Id.*   "In that instance,

the pleadings and affidavits submitted must be viewed in a light most favorable to

plaintiff, and the district court should not weigh 'the controverting assertions of the

part seeking dismissal.'"  *Id.*

 Plaintiffs pled facts that clearly demonstrate that this Court has jurisdiction.

See Amended Complaint [Doc. 12, ¶¶ 35-36, 75-76].

> 35.    Jurisdiction exists in this Honorable Court pursuant to 28
> U.S.C. § 1332 and the Constitution and Laws of the United States.
> Defendants specifically and purposefully targeted residents of the State
> of Michigan, with full knowledge and intent that the effects of their
> actions would be felt in the State of Michigan, and thereby purposefully
> availed themselves of the jurisdiction of this Honorable Court. *See,
> e.g., Calder v. Jones,* 465 U.S. 783 (1984).  Defendants did not commit
> "mere untargeted negligence." *Id.* at 789. Defendants singled Plaintiffs
> out, published statements about them on the internet identifying them as
> residents of Michigan to intentionally cause harm to them in Michigan
> and thereby formed sufficient contact with Michigan through their
> actions.  *See Alahverdian v Nemelka*, 2015 WL 5004886 (S.D. Ohio,
> August 24, 2015);   Specifically, Defendants created and participated in
> a doxing campaign specifically targeted at Michigan citizens, with a call
> to action in Michigan with the goal of inciting violence against and
> endangering them in Michigan. This method of malicious targeting is
> well-established in the extreme alt-right community. *See Tanya Gersh
> v. Andrew Anglin,* pending in the United States District Court for the
> District of Montana, Case No. 9:17-cv-00050-DLC-JLC, Complaint for
> Invasion of Privacy, Intentional Infliction of Emotional Distress, and
> Violations of the Anti-Intimidation Act.   Plaintiffs aver that their
> damages exceed the jurisdictional threshold of $75,000 under 28 U.S.C.
> § 1332 and their damages occurred in the state of Michigan.

36. Each of the Defendants falsely identified the ownership of the car in question as belonging to a Michigan resident. Defendants falsely stated the vehicle in question was owned by Jerome Vangheluwe or Joel Vangheluwe. The truth was stated on the State of Michigan Secretary of State website that Jerome Vangheluwe sold this car years ago. Therefore, the nexus of this case was correct information on and through the Michigan Secretary of State, which is the Michigan governmental entity responsible for documenting vehicle ownership. It was the false use of information allegedly obtained through the state of Michigan that is the nexus of Defendants' defamatory comments.

75. **Defendant Richard Weikart**. Defendant Richard Weikart made a defamatory statement that he knew would have a potentially devastating impact upon the Plaintiffs, and he knew that the brunt of that injury would be felt by the Plaintiffs in Michigan – the state where Plaintiffs live and work. Under these circumstances, Defendant Richard Weikart reasonably anticipated being haled into court in Michigan to answer for the truth of the statements made.

76. Defendant Richard Weikart deliberately availed himself of the jurisdiction of Michigan courts. To further the alt-right agenda Defendant Richard Weikart propagated this defamatory story to further fuel the alt-right movement by targeting a Michigan resident and distributing his identity and to the alt-right network. Defendant Richard Weikart purposely availed himself of the privilege of acting in Michigan though his website, because his website is interactive to a degree that reveals he specifically intended interaction with residents of Michigan. Defendant Richard Weikart intentionally committed a tortious act which was expressly aimed for dissemination in Michigan, and the brunt of the effects of those actions were felt within Michigan. Defendant Richard Weikart's defamatory statements – discussed in more detail below – were in further support of the alt-right political platform.

## B. The *Calder* Effects Test.

Defendant correctly identifies the "*Calder* effects test" as the correct test to apply.  Defendant never actually cites to *Calder*.  However, he further explains that *Walden* should also be used here.  This is incorrect.  *Walden* specifically distinguishes itself from internet cases.  *Walden v. Fiore*, 571 U.S. 277, 281 n.9 (2014).  Plaintiffs will more thoroughly discuss *Walden* below.

It is called the "*Calder* effects test" because jurisdiction arises from "effects" of defamation occurring in the Plaintiffs' resident state. In *Calder*, Shirley Jones (of Partridge Family fame) sued the National Enquirer and Calder (the editor of the article) for defamation. The National Enquirer had alleged Jones was an alcoholic (here Defendant claims Plaintiff was the Charlottesville "attacker"). *Calder v. Jones*, 465 U.S. 783 (1984).

The U.S. Supreme Court in a unanimous decision noted that Ms. Jones was in California and the "effect" of the defamation was in California. The Court rejected defendant's argument that the National Enquirer should be sued in Florida since the defendant was based in Florida and had made the statements in Florida. The Court noted that defendant "wrote and edited an article that they knew would have a potentially devastating impact on [Jones], and they knew that the brunt of that injury would be felt by [Jones] in the state in which she lives . . . ." *Id*. at 783.

To satisfy the *Calder* effects test, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state. *Thompson v. Moore*, No. 5:09CV2033, 2009 WL 3378242, at *3 (N.D. Ohio Oct. 15, 2009).

The first prong is satisfied as Defendant sent the defamatory tweet intentionally. Further, Defendant's statement was intended to further his alt-right agenda. Amended Complaint [Doc. 12, pp 2-4, 32-33]. He intended to distract from the actual facts that a member of the alt-right was the person who committed the crimes. *Id.* Instead, Defendant intended to further his alt-right agenda by blaming Plaintiff. *Id.* He intended to identify Plaintiffs to other members of the alt-right network. *Id.*

"Under the second prong of the *Calder* effects test, [t]he exact form of [a court's] analysis varies from case to case and depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue . . . In cases involving harmful communications, courts have held that the 'express aiming' requirement of the [Calder] effects test remains satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state. " *Leibman v. Prupes*, No. 2:14-cv-09003-CAS(VBKx),

2015 WL 898454, at *9 (C.D. Cal. Mar. 2, 2015) (internal quotations omitted) (finding personal jurisdiction based on emails sent to a California resident threatening blackmail) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*, No., C13-1347-JCC 2014 U.S. Dist. LEXIS 161497, 2014 WL 5880170, at *2-3 (W.D. Wash. Sept. 30, 2014) (finding jurisdiction over California company that placed pre-recorded phone calls to Washington businesses without consent)." *Cisco Sys. Inc. v. STMicroelectronics Inc.*, No. 5:14-CV-03236-RMW, 2015 WL 5138556, at *3 (N.D. Cal. Sept. 1, 2015). Here, Defendant specifically calls Plaintiffs out as residents of Romeo, Michigan.  He claims (paradoxically) that Plaintiffs own a Michigan car with an Ohio license plate.  He also states Joel Vangheluwe was the attacker.  See Exhibit S to Amended Complaint [Doc. 12-19].

Defendant could not have been clearer.  He connected his defamation to Plaintiffs.  He connected Plaintiffs to Michigan.  Plaintiffs felt the effects of Defendant's defamation in Michigan.

The third prong of the *Calder* effects test is that Plaintiffs show they were harmed in the forum state.  *Id.* at 4.  "As a direct result of Defendants' actions, the Plaintiffs received death threats and were urged by Michigan State Police to leave their home for fear of their safety. The injury to their reputations and business

aspirations is astronomical." Amended Complaint [Doc. 12, ¶ 10].  The *Calder* effects test is satisfied.

### C. Defendant's reliance on *Binion* is misplaced.

Defendant's reliance on *Binion* is misplaced, as *Binion* is easily distinguished. In *Binion*, the famous basketball player Shaquille O'Neal posted a picture of plaintiff and himself.  *Binion v. O'Neal*, 95 F. Supp. 3d 1055 (E.D. Mich. 2015).  O'Neal attempted to make a face, mimicking plaintiff and highlighting plaintiff's disabilities.  Plaintiff suffered from a rare genetic condition called ectodermal dysplasia, which causes cosmetic abnormalities.

Considering the decision in *Binion* and looking at the underlying pleadings (of which Plaintiffs ask the Court to take judicial notice), it is clear that O'Neal never said that plaintiff lived in Michigan; O'Neal didn't know plaintiff lived in Michigan. O'Neal made no derogatory comments about plaintiff but did make a distasteful photograph of himself by making a face.  He did not claim any defamatory statements that linked plaintiff to Michigan.  In *Binion*, the defendant made no mention of the plaintiff being from Michigan in any way.

The *Binion* facts are very different from the case at hand.  Here, Defendant knew Plaintiff was from Michigan, identified him as a Michigan resident and even attempted (falsely) to identify his car.  The *Binion* court made mention that no such

connection to Michigan had been made by O'Neal, but unlike O'Neal, Defendant Weikart does make the connection to Michigan.

### D. Defendant's Reliance On Walden Is Misplaced.

Defendant's use of *Walden v. Fiore*, 571 U.S. 277 (2014) is also misplaced. However, even if this Court were to follow the reasoning in *Walden*, Plaintiffs prevail.  In *Walden*, a police officer seized cash from Nevada residents in Georgia. The Supreme Court found the Nevada District Court lacked personal jurisdiction over petitioner. In *Walden*, the tortious conduct took place physically in Georgia. In the case at bar, the tortious defamatory conduct took place over the internet. This distinction was recognized in *Walden* itself. "We leave questions about virtual contacts for another day." *Id*. at 290 n.9.

Therefore, such a crucial distinction requires a different type of analysis:

"This case requires the evaluation of Youku's contacts with the United States in the context of the internet. Although such questions have become increasingly common, "the relationship between a defendant's online activity and its amenability to suit in a foreign jurisdiction often remains ill-defined." *Revision Military, Inc. v. Balboa Mfg. Co.*, No. 5:11-CV-149, 2011 U.S. Dist. LEXIS 98801, 2011 WL 3875624, at *6 (D. Vt. Aug. 31, 2011), *vacated in part on other grounds* by 700 F.3d 524 (Fed. Cir. 2012). The Supreme Court has yet to offer guidance in this area, *see, e.g., Walden v. Fiore*, 134 S. Ct. 1115, 1125 n.9, 188 L. Ed. 2d 12 (2014) (noting that Walden did not present the questions "whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State," and "leaving questions about virtual contacts for another day").

*Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 23 (D.D.C. 2017). The Sixth Circuit too has recognized this distinction. *See Alahverdian v. Nemelka*, 3:15-CV-060, 2015 WL 5004866 (S.D. Ohio Aug. 24, 2015).

Here, Plaintiffs meet all the concerns expressed in *Walden*. The conduct did not occur in one state (as in *Walden*); instead, it occurred in all states. Defendant here went out of his way to single out Plaintiffs (unlike *Walden*). Defendant here intended to harm Plaintiffs to further Defendant's political agenda. Here, Defendant formed a contact by specifically identifying Plaintiffs as living in Romeo, Michigan. Here, Defendant's own false statements link him to Michigan.

*Alahverdian* is more analogous to this case than *Walden*. *Alahverdian v. Nemelka*, Case No. 3:15 CV-060, 2015 WL 5004886 (S.D. Ohio, Aug. 21, 2015). In *Alahverdian*, plaintiff's identity was stolen and used by defendant on the internet and Twitter account as his own. Defendant wrote disgusting and inappropriate emails using plaintiff's identity. Plaintiff sued defendant for sending these emails and tweets. Defendant, a citizen of Utah, claimed that the Ohio court lacked jurisdiction over him. The court disagreed:

> Although Defendant may have never traveled to Ohio, nor has he previously conducted activities within Ohio, it is alleged that Defendant sent electronic communications to various internet users world-wide causing harm to Plaintiff whom Defendant knew to reside in Ohio. **Additionally, as mentioned above, although mere injury is not a**

**sufficient connection with the forum State, this injury suffices since the Defendant in this case, unlike the one in *Walden*, formed and initiated the contact with the forum State himself**.

Furthermore, the Sixth Circuit has held that "'[m]aking phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action.'" *Rice v. Karsch*, 154 Fed. Appx. 454, 460 (6th Cir. 2005), quoting *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001). **Similar to making phone calls or sending facsimiles, sending emails into the forum intended to harm a specific person located in that forum is sufficient to confer jurisdiction over a foreign defendant where the emails form the basis for the action**.

*Id*. at *7.

Here, Defendant Weikart clearly knew Plaintiffs were from Michigan. His Tweet defaming the Plaintiffs identified Plaintiffs as Michigan residents, specifically Romeo, Michigan. Next, Defendant even misidentified the Plaintiff's vehicle. Such specific details constitute sufficient contact with Michigan for jurisdiction. As articulated in *Alahverdian*, the alternative to plaintiff filing suit in his home jurisdiction is to file multiple lawsuits in defendant's home states across the country. This is not a reasonable solution.

. . it would place the same burdens, if not additional burdens, on the Plaintiff as this case in Ohio places on the Defendant. The difference, however, is Plaintiff arguably did not act in any way to bring this upon himself. **Instead, Defendant allegedly directed his activity towards Plaintiff in Ohio to harm Plaintiff in Ohio. Thus, even if all there is here is a Defendant broadcasting things to the world about**

> **Plaintiff, it is more than what Utah would have under these circumstances.**
>
> Therefore, since the Ohio long-arm statute confers jurisdiction, and Federal Due Process concerns do not defeat jurisdiction, this court denies Defendant's Rule 12(b)(2) motion.

*Id*.

### E. Defendant's Reliance on *Sanders* is Misplaced.

*Sanders v. Sennholz* is likewise distinguishable. *Sanders v. Sennholz*, Case No. 17-10578, 2017 WL 3215207 (E.D. Mich. July 28, 2017). In *Sanders*, a *pro se* plaintiff launched a citizen initiative that sought a "revote" of the 2016 elections. *Id.* at *1. Plaintiff created a legal strategy for the revote, and prepared a writ of mandamus seeking to permanently enjoin (1) the swearing-in of newly elected congressional members, (2) ratification of electoral votes, and (3) the swearing in of the (then) President-elect and (then) Vice President-elect on January 20, 2017. *Id.* The writ was filed in at least two other courts in the country. *Id.* This legal strategy received praise from public figures and news stations, which led to discussions of possible book deals and speaking tours. *Id.* Plaintiff claimed she was the sole creator of the writ, while some defendants claimed Plaintiff was not the sole creator. *Id.* As a result, Plaintiff filed her lawsuit *pro se*.

In *Sanders*, the defendants likewise sought to dismiss the lawsuit on lack of personal jurisdiction. *Id.* at *2-7. The court found there was no personal jurisdiction

over plaintiff's copyright claims because "there is no evidence presented whatsoever that any of these acts were expressly aimed at Michigan or Michigan citizens." *Id.* at *6.    The court likewise found there was no personal jurisdiction over plaintiff's defamation claims because "[t]hese allegations do not target Plaintiff's reputation in Michigan, and the claimed reputational injury would have occurred regardless of whether the publication did reach Michigan and was read by a large number of Michigan residents." *Id.*

The facts in *Sanders* are materially different than the facts in this case. Defendant's defamatory tweet specifically identified the residence of Joel Vangheluwe – Romero, Michigan.   Of course Defendant Weikart knew he was targeting a Michigan citizen, given that he identified the Michigan city in which Joel Vangheluwe lives.  Defendant Weikart clearly targeted the Plaintiffs' reputation in Michigan.   Defendant Weikart's statement, as well as those of other defendants, acted as a call to action in Michigan. "As a direct result of Defendants' actions, the Plaintiffs received death threats and were urged by Michigan State Police to leave their home for fear of their safety. The injury to their reputations and business aspirations is astronomical." Amended Complaint [Doc. 12, ¶ 10].   None of these facts were present in the *Sanders* case.

### F. Plaintiffs Agree With Defendant: The Zippo Test Does Not Apply In This Case.

Plaintiffs agree with Defendant that the Zippo Test does not apply in this instance, as this case concerns social media. Defendant states in his Motion: "Zippo was decided when the internet was still in its infancy and most websites provided simple information with little to no user interactivity." Defendant Richard Weikart's Renewed Motion to Dismiss [Doc. 42, n.3].  These social media sites do not lend themselves to the Zippo interactivity test for several reasons. First, the defendants neither own nor operate the web sites. In fact, they could be aptly described as merely visitors or account holders who posted information on the web sites. More importantly, these web sites —at least in this case — do not appear to have been primarily used to conduct business. Rather, it appears that they were used as a means of spreading information which has been characterized by the Plaintiffs as disparaging. *Hyperbaric Options, LLC. v. Oxy Health LLC.* 12-12020 2013 WL 5449959, at 16-17 (E.D.Mich. Sept. 30, 2013).

### G. Michigan Court Has Jurisdiction Over Richard Weikart Under Michigan's Long Arm Statute.

The Court has jurisdiction so long as Defendant's actions are done in Michigan *or consequences occur in Michigan* from Defendant's tort. M.C.L., § 600.75. The Court may exercise limited personal jurisdiction under Sections

600.705(2) of Michigan's long-arm statute because each defendant has engaged in tortious conduct that has caused consequences in Michigan. These sections provide that a court has limited personal jurisdiction over non-resident defendants who "do or cause an act to be done, or consequences to occur, in the state resulting in an action for tort." Mich. Comp. Laws § 600.705(2). To come within the plain language of these sections, the defendants' tortious conduct <u>or the injury caused by that conduct must occur in Michigan</u>. *Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 680-81 (E.D. Mich. 2012) (*citing Bagsby v. Gehres*, 195 F.Supp.2d 957, 963 (E.D. Mich. 2002)). In this case, Defendant's defamatory tort clearly resulted in injury to Plaintiffs in Michigan.

"As a direct result of Defendants' actions, the Plaintiffs received death threats and were urged by Michigan State Police to leave their home for fear of their safety. The injury to their reputations and business aspirations is astronomical." Amended Complaint [Doc. 12, ¶ 10].

Defendant's feigned shock that he was haled into Michigan court after defaming a man he identified from Romeo, Michigan is as false as his claim that Joel Vangheluwe from Romeo, Michigan was the Charlotteville attacker.

The Tweet is certainly more than a "shout out" to Michigan (as Defendant claims in his Motion) when it refers to so many specific details with respect to

Michigan within the 140 character limit on Twitter. Defendant claims that had there been a hashtag in the form of "#Michigan," it could be argued that Defendant was directing his tweet towards Michigan. Defendant does not explain why a hashtag is the only tool that can be used for the proposition that it was "purposely directed for dissemination towards a Michigan audience." There is no case law cited for this statement.

## V.   CONCLUSION

For the above-stated reasons, this Court should deny Defendant's Motion to Dismiss in its entirety.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs' request this Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

SOMMERMAN, McCAFFITY
& QUESADA, L.L.P.

**_/s/_ Andrew B. Sommerman**
Andrew B. Sommerman*
ATTORNEYS FOR
PLAINTIFFS
Texas State Bar No. 18842150
3811 Turtle Creek Boulevard,
Suite 1400
Dallas, Texas 75219
214/720-0720 (Telephone)
214/720-0184 (Facsimile)
andrew@textrial.com

**AND**

KIRK, HUTH, LANGE
& BADALAMENTI, PLC
Raechel M. Badalamenti
(P64361)
CO-COUNSEL FOR
PLAINTIFFS
19500 Hall Road, Suite 100
Clinton Township, MI 48038
(586) 412-4900
Fax: (586) 412-4949
rbadalamenti@khlblaw.com

Dated:  July 6, 2018

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 6, 2018, the foregoing Response to Defendant Weikart's Motion to Dismiss was served via ECF on counsel of record who have appeared in the case.

Furthermore, on July 6, 2018, I affirm that I placed true and accurate copies of this document in First Class postage-prepaid, properly addressed, and sealed envelopes which were addressed to:  Lita Coulthart-Villanueva, ███ Jeffries St., Anderson, CA ███ and Kenneth G. Strawn, ███ Cypress Lane, Mission Viejo, CA ███.


_/s/ *Andrew B. Sommerman*_____
Andrew B. Sommerman