UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOEL VANGHELUWE and<br>JEROME VANGHELUWE,<br><br>    Plaintiffs,<br><br>v.<br><br>GOT NEWS, LLC, *et al.*,<br><br>    Defendants. | Case No. 18-cv-10542<br>Honorable Laurie J. Michelson<br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER DENYING GOT NEWS' MOTION TO DISMISS [50]**

During the highly-charged "Unite the Right" rally held in Charlottesville, Virginia, in August 2017, a gray, Dodge Challenger plowed into a crowd of counter-protestors. One was killed, many were injured. A reporter for GotNews, LLC learned from an internet forum that the Dodge Challenger had been registered to a Jerome Vangheluwe of Michigan. The reporter then searched the social media pages of Jerome's relatives and found a picture of Jerome's son, Joel Vangheluwe, standing next to a gray, Dodge Challenger. The picture included this comment from Joel: "My car when I turn 16." GotNews thus concluded that Joel was the Charlottesville attacker. So it posted an article to its website with the headline: "BREAKING: #Charlottesville Car Terrorist Is Anti-Trump, Open Borders Druggie." Under this title was a picture of Joel. The article went on to include posts from Joel's social media allegedly supporting the assertion that he opposed Donald Trump's presidency, that he favored open borders, and that he used drugs. Whether based on GotNews' article or from other sources, people began accusing Joel or Jerome of being the Charlottesville driver. In fact, Joel and Jerome received threats that caused them to abandon their

home for a time. As it turns out, neither Joel nor Jerome drove the Dodge Challenger into a crowd of people in Charlottesville. They were back in Michigan, hosting a wedding.

Joel and Jerome Vangheluwe thus brought this lawsuit against twenty individuals and two news entities, including GotNews. The Vangheluwes claim, among other things, that GotNews defamed them. While Jerome and GotNews have settled their dispute, Joel and GotNews have not. GotNews, invoking Federal Rule of Civil Procedure 56 and California's anti-SLAPP statute, asks the Court to grant summary judgment in its favor. For the reasons that follow, the Court will deny GotNews' motion.

I.

A.

On August 12, 2017, rallygoers arrived at Emancipation Park in Charlottesville, Virginia. Joe Heim, *Recounting a Day of Rage, Hate, Violence and Death*, Wash. Post, Aug. 14, 2017, https://wapo.st/2CssdbW; *accord* Fox News, *Charlottesville White Nationalist Rally Blamed for 3 Deaths, Dozens of Injuries*, Fox News, Aug. 12, 2017, https://fxn.ws/2PDJ2pW. They "arrived in contingents, waving nationalist banners and chanting slogans. Many carried shields and clubs." Heim, *supra*. The rallygoers were met by counter-protesters: "Members of anti-fascist groups yelled at the rallygoers. Many of them also carried sticks and shields." *Id.* Shortly before 11:00 a.m., a fight broke out between the rallygoers and the counter-protesters. *Id.* Fortunately, law enforcement was able to subdue the violence without anyone suffering serious injuries. *Id.* In fact, the rallygoers headed toward downtown Charlottesville and the counter-protesters did not follow. *Id.* "[I]t felt like a major disaster had been averted." *Id.*

Tragically, that was not the case. Suddenly, a gray, 2010 Dodge Challenger plowed into a crowd of pedestrians. *See* Fox News, *supra*. "Heather Heyer, 32, of Charlottesville was killed, and

19 others were injured." Heim, *supra*. By the evening of the attack, James Alex Fields Jr. was identified as the driver of the Challenger.

But a few hours is a long time in today's world of online-only news organizations and social media. Shortly after the attack, users of a 4Chan.org forum (the "/pol/" or "Politically Incorrect" forum, to be specific) were able to track down the vehicle identification number for the Dodge Challenger. (*See* ECF No. 50, PageID.989.) And a 4Chan user had run the VIN through SearchQuarry.com. (ECF No. 50, PageID.991.) (According to its website, SearchQuarry allows its users "to search for many different kinds of public records including but not limited to criminal records, vehicle records, civil records, court records, driving records, . . . .") The 4Chan user posted a screenshot of the SearchQuarry results; the screenshot stated in part, "Owner Name: Joel Vangheluwe." (ECF No. 50, PageID.991.) A reporter for Defendant GotNews, LLC saw this screenshot on the 4Chan message board or otherwise learned of it. (*See* ECF No. 50, PageID.937.) And with the name Jerome Vangheluwe in hand, the GotNews reporter located the social media pages of Jerome's then 20-year old son, Joel Vangheluwe. (*Id.*)

A few of Joel's social-media postings are relevant here. A Facebook post—from nearly six years before the events in Charlottesville—included a picture of Joel standing next to a gray, Dodge Challenger with the caption, "My car when I turn 16." (ECF No. 1, PageID.32.) Joel's social-media accounts also had artsy posts (a poem or song lyrics) followed by about a dozen hashtags; among the hashtags was "#stoned." (ECF No. 1, PageID.33–34.) Another of Joel's posts stated, "if only trump was aborted." (ECF No. 1, PageID.36.) Joel had also posted a picture of people holding a sign that stated, "We do not Choose Our Color, Race, or Place of Birth. F[*]ck Borders. F[*]ck Nations." (ECF No. 1, PageID.39.)

Based on the information gathered (or, from the Vangheluwes' perspective, lack of information gathered), GotNews identified Joel Vangheluwe as the person who had just killed one and injured 19 in Charlottesville. The article started this way:



4

(ECF No. 91, PageID.1323; *accord* ECF No. 12, PageID.468.) The article continued with screenshots of Joel's social-media posts. One screenshot revealed that Joel had attended high school in Romeo, Michigan. (ECF No. 91, PageID.1324.) The GotNews article also included Joel's artsy posts, his post about aborting President Donald Trump, and the one with the open-borders sign. (ECF No. 91, PageID.1326–1328.) GotNews also commented on Joel's posts. For instance, in response to Joel's post of him standing next to the Challenger, someone had joked to Joel, "dont crash it on the first day now. lol." (ECF No. 91, PageID.1324.) GotNews remarked, "'Don't crash it on the first day!' a comment jokes. Not so funny now." (*Id.*) As another example, GotNews remarked, "Joel likes taking drugs and getting stoned, a look at his social media shows. What [*sic*] he under the influence when he crashed into the crowd at Charlottesville?" (ECF No. 91, PageID.1325.)

Other online news entities also identified Joel as the Charlottesville driver. Freedom Daily, LLC posted an article titled, "BREAKING: Driver Who Plowed Into Charlottesville Crowd Identified—Media Tries To Hide Who It Is." (ECF No. 12, PageID.449.) And The Gateway Pundit wrote, "REPORT: Driver in Virginia Car Attack Was Anti-Trump Protestor—Joel Vangheluwe." (ECF No. 12, PageID.450.) Puppet String News wrote something similar. (ECF No. 12, PageID.450.) And Studio News Network posted a video to YouTube with the heading, "Left-winger mowed down antifa protestors in Charlottesville, not a right-winger Evidence indicates." (ECF No. 12, PageID.452.)

But it was not just online news outlets that implicated the Vangheluwes. People took to Facebook and Twitter. For instance, Lori Twohy posted the following on her Facebook page:

> Copy / paste only.
>
> This is the car that ran over our comrades. Killed 3. 11 v seriously injured.
>
> This vehicle is registered / owned by: Jerome Vangheluwe
>
> 2010 Dodge Challenger
> Vin # : 2b3cj4dv8ah111921
>
> Second photo is of laptop screen so I can see info in unaltered or false
>
> It's time to ACTUALLY strike back, comrades.

(ECF No. 1, PageID.107.) The redacted portion contained Jerome's address. A number of people posted something similar to their Facebook or Twitter accounts, including Jerome's home address. (*See e.g.*, ECF No. 1, PageID.105.)

**B.**

While James Alex Fields Jr. was actually driving the Dodge Challenger that Jerome had sold years earlier, the Vangheluwe family was busy hosting a wedding for a family member at their home in Michigan. (ECF No. 12, PageID.416.) "During that wedding the Vangheluwes' social media, emails, and text messages became overwhelmed with messages and posts." (*Id.*) According to Joel and Jerome, "the Vangheluwes began receiving countless anonymous threats." (ECF No. 12, PageID.457.) In fact, they say, "Michigan State police were notified and the family was warned to leave their home." (*Id.*) "Clients of Jerome Vangheluwe's business also became fearful after the online threats." (*Id.*)

To recover for the harm from the misidentification, Jerome and Joel filed this lawsuit against two news entities and twenty individuals. (*See generally* ECF Nos. 1, 12.) One of the two

6

news entities is GotNews, LLC and one of the twenty individuals is GotNews' editor, Charles Johnson.

Since the filing of this action, the Vangheluwes have partly resolved their dispute with GotNews and Johnson. In particular, Jerome has (except for one possible disagreement about post-judgment interest) settled his dispute with both GotNews and Johnson. (ECF Nos. 88, 89; ECF No. 58, PageID.1159 n.1.) And Joel (save for the same post-judgment interest issue) has settled his dispute with Johnson. (ECF No. 87.) But Joel and GotNews have not been able to resolve their dispute.

It appears that one impasse to resolution is the parties' disagreement about the strength of Joel's claims. GotNews has filed a motion pursuant to both Federal Rule of Civil Procedure 56 and California's anti-SLAPP statute—a statute designed to terminate frivolous defamation suits before they get rolling. (ECF No. 50.) Joel has responded that the anti-SLAPP motion itself is "frivolous and [is] solely intended to cause unnecessary delay." (ECF No. 58, PageID.1180.)

The Court proceeds to remove this impasse.

## II.

### A.

The parties devote much of their briefs to debating whether GotNews, an LLC whose two members are Californians, can invoke California's anti-SLAPP statute in a case brought by a Michigander in a federal court located in Michigan. (*See* ECF No. 50, PageID.941–945; ECF No. 58, PageID.1161–67; ECF No. 81, PageID.1284.) In doing so, they invoke choice-of-law doctrines better left to a law school class.

As it turns out, the Court can assume in GotNews' favor that *dépeçage* applies and that California's interest in permitting a California entity to invoke that state's anti-SLAPP law is

7

greater than any countervailing interest Michigan has in precluding anti-SLAPP motions. The Court can proceed under this assumption because, even resolving the choice-of-law question in GotNews' favor, GotNews' motion should be denied.

That simplifying assumption, however, leads to a different complication. California's anti-SLAPP statute gives a defendant who engaged in constitutionally protected speech a tool to dismiss "meritless" defamation (and related) claims early in the litigation. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). "California lawmakers wanted to protect speakers from the trial itself rather than merely from liability." *See Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766 (9th Cir. 2017) (internal quotation marks omitted). But pursuing that goal in federal court raises *Erie* questions. *See* 304 U.S. 64 (1938). After all, the Federal Rules of Civil Procedure already provide a defendant with a tool for early dismissal (Rule 12(b)(6)) and a tool for somewhat-early dismissal (Rule 56). A Rule 12(b)(6) motion asks whether the plaintiff's allegations make it "plausible" that the defendant is liable, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and a Rule 56 motion asks whether the plaintiff's evidence would permit any reasonable jury to find that the defendant is liable, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Yet the anti-SLAPP statute introduces a third standard: "reasonable probability." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018); *see also* Cal. Civ. Proc. Code § 425.16(b)(1). In particular, if the defendant can show that it spoke about a "public issue," the anti-SLAPP statutes places the burden on the plaintiff to show that he has a "reasonable probability" of winning. *Planned Parenthood*, 890 F.3d at 833. The differing standards under Rule 12(b)(6), Rule 56, and California's anti-SLAPP statute resulted in much debate. *Compare Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013) (Wardlaw, J.) ("California's anti-SLAPP statute, by creating a separate and additional theory upon which

8

certain kinds of suits may be disposed of before trial, supplements rather than conflicts with the Federal Rules."), *with Makaeff*, 736 F.3d at 1188 (Watford, J.) ("California's anti-SLAPP statute conflicts with Federal Rules 12 and 56. Taken together, those rules establish the exclusive criteria for testing the legal and factual sufficiency of a claim in federal court."). Indeed, this case points up the problem: GotNews unequivocally states that its motion is one under Rule 56 but at the same time invokes the anti-SLAPP "probability" standard. (*Compare* ECF No. 50, PageID.940, *with* ECF No. 50, PageID.947.) And both sides cite portions of *Makaeff* that favor their positions. (*Compare* ECF No. 58, PageID.1163, *with* ECF No. 81, PageID.1284.)

Although neither side cited the opinion, the Ninth Circuit has apparently resolved their internal debate. In *Planned Parenthood*, the Ninth Circuit held that if an anti-SLAPP motion challenges the "legal sufficiency" of a claim, then a federal district court should apply Rule 12(b)(6) standards; and if the motion challenges the "factual sufficiency" of the claim, then the court should apply Rule 56 standards (including opportunity for discovery). 890 F.3d at 834; *see also Taus v. Loftus*, 151 P.3d 1185, 1205 (Cal. 2007) ("[T]he [California] Legislature did not intend that a court, in ruling on a motion to strike under [the anti-SLAPP] statute, would weigh conflicting evidence to determine whether it is more probable than not that plaintiff will prevail on the claim, but rather intended to establish a summary-judgment-like procedure available at an early stage of litigation."). This manner of harmonizing the Federal Rules and California's anti-SLAPP statute is entirely sensible.

And it is entirely consistent with GotNews' aim in filing its Rule-56-anti-SLAPP motion. GotNews makes clear that it only wants three things from California's anti-SLAPP statute: an early ruling on the merits of Joel's claims, the right to an interlocutory appeal should that early ruling not be to its liking, and attorney's fees and costs if it prevails on its motion. (*See* ECF No. 58,

9

PageID.1281.) And GotNews has attached evidence to its motion and twice states that its motion can be decided under Rule 56 standards. (ECF No. 58, PageID.1281; ECF No. 50, PageID.947 n.19.)

So looking past all the procedural fencing, GotNews has essentially filed an early summary-judgment motion on a limited record. Other than that, California's anti-SLAPP statute just puts some extra skin in the game: if GotNews wins its motion, it gets fees; but if the motion is frivolous or solely to delay, Joel gets fees. Cal. Civ. Proc. Code § 425.16(c)(1). At bottom, GotNews' motion tasks the Court with answering three questions: viewing the current record in the light most favorable to Joel, could a reasonable jury find that GotNews committed the Michigan torts of defamation, false light, or IIED?

**B.**

The Court starts with defamation. GotNews says that Joel's defamation claim fails for a host of reasons.

**1.**

To start, GotNews argues that Joel cannot establish the falsity element of a defamation claim. *See Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005) (listing elements). For example, GotNews isolates the following statement from its article: "License plate searches of the 2010 Dodge Challenger that killed one and injured nearly 20 in Charlottesville found that the vehicle was registered to a Jerome Vangheluwe of Michigan." (ECF No. 50, PageID.949.) "This is true," GotNews says, because "searches found [Jerome's] ownership, even though the public records were incorrect." (*Id.*) GotNews proceeds to identify two more statements from its article about Joel that it believes are true. (*See id.*) Thus, GotNews concludes, its "statements were not false" (ECF No. 50, PageID.948) and so Joel cannot prevail on his defamation claim.

10

This argument is noticeably incomplete. And one need not go much past the article's headline to see why. The title boldly asserted the following: "BREAKING: #Charlottesville Car Terrorist Is Anti-Trump, Open Borders Druggie." (ECF No. 12, PageID.468; *accord* ECF No. 91, PageID.1323.) So if Joel is the referenced "Anti-Trump, Open Borders Druggie," then GotNews said that Joel "is" the "#Charlottesville Car Terrorist." And that would be materially false.

In this Court's view, any reasonable reader of GotNews' article would conclude that Joel is the referenced anti-Trump, open borders, druggie. Joel's picture is right after the article's title. (ECF No. 12, PageID.468.) And the article is devoted to establishing that Joel has each of the three traits listed in the title. GotNews included Joel's artsy posts containing the word "stoned" to establish that Joel is a "druggie" (ECF No. 91, PageID.1325–1328); GotNews included Joel's "if only trump was aborted" post to establish that Joel is "anti-Trump" (ECF No. 91, PageID.1329–1331); and GotNews included Joel's post of a banner stating "F[*]ck Borders" to establish that Joel favors "Open Borders" (ECF No. 91, PageID.1331). The article also stated, "*Joel* likes taking drugs and getting stoned, a look at his social media shows. What [*sic*] he under the influence when *he* crashed into the crowd at Charlottesville?" (ECF No. 91, PageID.1325 (emphasis added).) Indeed, Joel is the *only* person discussed in the article. So every reasonable reader of the article would come away with the impression that the referenced "Anti-Trump, Open Borders Druggie" was Joel. And the title of the article says that person, i.e., Joel, "Is" the "#Charlottesville Car Terrorist." That is false.

In short, a reasonable jury could find the title of the article to be false and the "gist" of the entire article to be false. *See Koniak v. Heritage Newspapers, Inc.*, 499 N.W.2d 346, 348 (Mich. Ct. App. 1993) ("[T]he test to determine material falsity is whether the evidence supports a finding that the 'sting' or 'gist' of the article would have a different effect upon the mind of the reader than

11

would the literal truth"); *Hawkins v. Mercy Health Servs., Inc.*, 583 N.W.2d 725, 732 (Mich. Ct. App. 1998) (providing that "even without a direct showing of any actual literally false statements" a plaintiff may nonetheless prevail on a defamation claim by proving that "defamatory implications are materially false").

2.

Even if a jury could find that GotNews made false and defamatory statements about Joel, GotNews says that it is protected by certain privileges. *See Bedford v. Witte*, 896 N.W.2d 69, 72 (Mich. Ct. App. 2016) ("[I]n certain situations, the criticism uttered by the defendant is sufficiently important to justify protecting such criticism notwithstanding the harm done to the person at whom the criticism is directed."). Under Michigan law, a speaker's privilege can be a complete defense to a defamation claim. *See Oesterle v. Wallace*, 725 N.W.2d 470, 474 (Mich. Ct. App. 2006) (discussing absolute privilege). Or, short of an absolute privilege, a qualified privilege operates to increase the plaintiff's burden of proof: as opposed to merely showing that the speaker was negligent, the plaintiff must show that the speaker "entertained serious doubts as to the truth" of its statements but went ahead and made them anyway, i.e., the speaker was reckless. *See Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 542 (Mich. 2010). And, GotNews argues, given its reliance on the 4Chan board and public records, no reasonable jury could think it published with reckless disregard for the truth (i.e., actual malice). (*See* ECF No. 50, PageID.951, 956.)

A premise of GotNews' argument is that at least one privilege applies. GotNews points to three. The Court does not believe they fit the facts.

Start with the "fair reporting" privilege. (ECF No. 50, PageID.950–951.) That statutory privilege essentially precludes a plaintiff from recovering damages "in a libel action for the publication . . . of a fair and true report of matters of public record." Mich. Comp. Laws

12

§ 600.2911. To be a "fair and true" report of a public record, the news article need not recite the content of the public record verbatim; the privilege applies so long as the "gist" of the article would not give a reader a different impression than the public record. *See Koniak v. Heritage Newspapers, Inc.*, 476 N.W.2d 447, 450 (Mich. Ct. App. 1991) (providing that the information published need only "substantially represent" the public records for privilege to apply). GotNews says that the gist of its article about Joel was the same as the gist of public records. (*See* ECF No. 50, PageID.950.)

The Court again disagrees.

To understand why, it is helpful to review the records upon which GotNews relies. First and foremost, none of them refer to Joel as a "Charlottesville Car Terrorist." One of the two posts on 4Chan was a screenshot of a search of the Ohio Bureau of Motor Vehicles' records; that screenshot showed that the Ohio BMV issued a title for the Dodge Challenger in May 2016, that the owner resided in Lucas County, Ohio, and that the associated vehicle identification number was "2B3CJ4DV8AH111921." (ECF No. 50, PageID.989.) The other post on 4Chan showed the results of running "2B3CJ4DV8AH111921" through SearchQuarry; those results included, "Owner Name: Jerome Vangheluwe." (ECF No. 50, PageID.991.) GotNews also points to records from the Michigan Department of State. Those list "Jerome Vangheluwe" as the title holder for the vehicle with VIN 2B3CJ4DV8AH111921—but the apparent issue date of the title was "05/15/2012" or earlier. (*See* ECF No. 50, PageID.994; ECF No. 50, PageID.1002 ("10/08/2009").) Finally, assuming without deciding it could be a public record, one of Joel's Facebook posts depicted him standing next to a Dodge Challenger with the remark, "My car when I turn 16." (ECF No. 91, PageID.1325.)

Now compare that public information with just some of what GotNews said in its article about Joel. GotNews said that the Dodge Challenger "was registered to a Jerome Vangheluwe of

13

Michigan" and that "[a] Facebook crawl of his relatives reveals that the car was in the possession of his son, Joel." (ECF No. 91, PageID.1323; *accord* ECF No. 12, PageID.468.) True, "was" is merely a reference to some point in the past and the public records show that some point in the past the Dodge Challenger was registered to Jerome Vangheluwe. But those two statements must be read in context. According to GotNews, the public "thirsted for information about the killer." (ECF No. 50, PageID.938.) And to quench that thirst, GotNews publishing an article stating, "BREAKING: #Charlottesville Car Terrorist Is Anti-Trump, Open Borders Druggie" and "Evidence indicates a left-winger mowed down antifa counter-protestors in Charlottesville, not a right-winger or with nationalist, GotNews can exclusively reveal." (ECF No. 91, PageID.1323.) So GotNews implied that the Dodge Challenger "was in the possession of . . . Joel" *at the time of the attack*.

But that was not what the public records implied. The Michigan records indicating that Jerome owned the Dodge Challenger appear to show title issuances in 2012 or earlier. (ECF No. 50, PageID.994, 996.) And while the Ohio records were from 2016, they did not say who the title was issued to. (ECF No. 50, PageID.989.) True, the SearchQuarry result (assuming this is a "public record") said the owner of the Challenger was Jerome and did not include any date. But the SearchQuarry result did not identify the underlying information or, importantly, whether the underlying information was current. (ECF No. 50, PageID.991.) So, in all, it is doubtful that the fair-reporting privilege even covered the statement that the Dodge Challenger "was registered to a Jerome Vangheluwe of Michigan."

And even if that statement was privileged, there is still GotNews' remarks about Joel. Indeed, it appears that the following was the tie between Jerome and Joel: "[a] Facebook crawl of [Jerome's] relatives reveals that the car was in the possession of his son, Joel." (ECF No. 91,

14

PageID.1323; *accord* ECF No. 12, PageID.468.) Even if the Facebook post with Joel next to the Dodge Challenger somehow qualifies for the fair-reporting privilege, the post was from October 2011—almost six years before the events in Charlottesville. Joel was 14 at the time, still a ways away from even driving. Thus, the Court does not believe that the "gist" of the GotNews article—that Joel was the Charlottesville terrorist—was the same as the gist of the public records.

GotNews also asserts the "wire service" privilege. Under Michigan law, "where a local news organization reproduces, without substantial change or knowledge of falsity, an apparently accurate wire release by a reputable news-gathering agency," the local news organization cannot be liable for the false, defamatory statements in its reproduction. *Howe v. Detroit Free Press, Inc.*, 555 N.W.2d 738, 740 (Mich. Ct. App. 1996); *accord Howe v. Detroit Free Press, Inc.*, 586 N.W.2d 85, 85 (Mich. 1998). Here, GotNews argues that the 4Chan posts were akin to wire releases and that it merely "reproduced the 4Chan story without substantial change." (ECF No. 50, PageID.955.) So, GotNews concludes, the wire-service privilege bars Joel's defamation claim. (*See id.*)

Yet again the Court disagrees. As an initial matter, giving GotNews the benefit of the wire-service privilege would be inconsistent with the rationale underlying the privilege. The privilege rests on the assumption that "no local news organization could assume the burden of verifying every news item reported to it by established news-gathering agencies and continue to satisfy the demands of modern society for up-to-the-minute global information." *Howe*, 555 N.W.2d at 741. Here, the GotNews reporter did his or her own investigation: "Armed with [the information from 4Chan], a GotNews reporter located Plaintiff Joel Vangheluwe's (Jerome's son) social media postings, bragging it was his car." (ECF No. 50, PageID.937.) In other words, the article was not merely a reproduction of what had been posted on 4Chan—it was the product of the 4Chan

15

information combined with GotNews' own data collection and GotNews' inferences drawn from that data collection.

The wire-service privilege does not warrant granting GotNews summary judgment for a second reason: the Court is not convinced that 4Chan is "a reputable news-gathering agency." *Howe*, 555 N.W.2d at 740; *Howe*, 586 N.W.2d at 85. As the name suggests, the privilege arose to allow smaller publications to reproduce stories from wire services, like the AP. *Id.* To fit 4Chan into this category, GotNews recounts how 4Chan users cleverly located a flag by examining nothing more than a small patch of sky in the background of a picture of the flag. (ECF No. 50, PageID.936 n.2.) But clever is not reliable. And Joel has produced evidence that 4Chan is not reliable. In particular, a Washington Post article on 4Chan begins this way: "4chan, that most elusive of Internet beasts, has seen a whole lot of press lately—little of it good." (ECF No. 58, PageID.1236.) The article goes on to say that "4chan is a series of wholly anonymous, anything-goes forums" and that because 4Chan users do not have to create accounts, "participants can say and do virtually anything they want with only the most remote threat of accountability." (ECF No. 58, PageID.1236–1237.) Moreover, the Politico article that GotNews cites does not establish that 4Chan is reliable. According to GotNews, the article shows that "reporters from ABC News and the Associated Press relied on 4Chan[.]" (ECF No. 50, PageID.955.) But the article in fact suggests that ABC and the AP relied on statements from the Anti-Defamation League, which, in turn, relied on 4Chan. (ECF No. 50, PageID.1047.) In any event, the reliance on 4Chan turned out to have been misplaced in that case just as it was here: "many of [the 4Chan] posts seem to have been written specifically to deceive reporters and researchers." (ECF No. 50, PageID.1048.) So the Court is not convinced that 4Chan was or is "a reputable news-gathering agency."

16

GotNews raises yet another privilege. It argues that the Charlottesville attack was "hot news" and given the short time before the story cooled, it should be forgiven for perhaps not vetting everything as thoroughly as it might have in different circumstances. (*See* ECF No. 50, PageID.953.)

But not one of the cases GotNews cites establishes a "hot" or "breaking" news privilege. Citing *Weeren v. Evening News Ass'n*, 152 N.W.2d 676 (Mich. 1967), GotNews claims that "Michigan recognizes a qualified hot-news privilege 'to disseminate current, topical, immediate news of public interest.'" (ECF No. 50, PageID.953 (quoting *Weeren*, 379 Mich. at 509).) But, without informing the Court, GotNews quotes from an opinion signed by just two of seven justices. And even then, the statement appears to have been dicta because *Weeren* did not deal with a breaking-news scenario. *See* 152 N.W.2d at 689–90.

GotNews also quotes *Time, Inc. v. Hill*, as follows: "Ordinarily, 'the constitutional protections for speech and press preclude the application of [state law] to redress false reports of matters of public interest in the absence of proof that the defendant published the report with knowledge of its falsity or in reckless disregard of the truth.'" (ECF No. 50, PageID.953 (quoting 385 U.S. 374, 387–88 (1967).) But GotNews' alteration is material: the "state law" was not defamation but more like false light. *See* 385 U.S. at 539, 541. As for a defamation, the Michigan Supreme Court has "rejected the actual-malice standard of liability in cases involving private-figure plaintiffs and a media defendant's report on matters of public interest." *Locricchio v. Evening News Ass'n*, 476 N.W.2d 112, 125 (Mich. 1991).

GotNews also thinks *Curtis Pub. Co. v. Butts*, 388 U.S. 130 (1967), establishes a "hot news" privilege. (*See* ECF No. 50, PageID.953.) But GotNews again quotes from a concurring opinion (and again without any indication that it was doing so). In any event, a majority of justices

17

agreed that the two plaintiffs in *Curtis* were public figures. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 336 (1974) (discussing *Curtis*). So it made sense that they had to prove more than "ordinary negligence." But no one is arguing that Joel was a public figure.

In sum, GotNews has not established that there is a privilege absolving it of liability or triggering the heightened actual-malice standard.

**3.**

After exhausting the privileges, GotNews retreats to arguing that no reasonable jury could find that it was negligent in identifying Joel as the "#Charlottesville Car Terrorist." (*See* ECF No. 50, PageID.38.)

But a reasonable jury could find that GotNews did not exercise due care in pointing the finger at Joel. *See Howe v. Detroit Free Press, Inc.*, 555 N.W.2d 738, 741 (Mich. Ct. App. 1996) ("The standard of conduct to which an actor must conform to avoid being negligent is that of a reasonable man under like circumstances."); Mich. Model Civ. Jury Instr. 118.08. Even assuming that there was some basis to believe that Jerome owned the Dodge Challenger, the tie to Joel was a six-year-old Facebook post. Joel was 14 years old when he posted a picture of himself standing next to the Challenger. And he was speculating that he would inherit the car when he turned 16. As it turned out, that never happened. So a reasonable jury could find that GotNews should have done more to verify that Joel was the "#Charlottesville Car Terrorist."

\* \* \*

In sum, the Court finds that GotNews is not now entitled to summary judgment on Joel's defamation claim.

## C.

That leaves Joel's claims that GotNews placed him in a false light and intentionally inflicted emotional distress.

The Court will address the merits of these claims at a later date. These two torts have different elements than defamation. For example, even if no privilege applies, Joel must prove that GotNews published the article in reckless disregard of the truth to make out a claim of false light. *Puetz v. Spectrum Health Hosps.*, 919 N.W.2d 439, 451 (Mich. Ct. App. 2018); Restatement (Second) of Torts § 652E (1977). As another example, IIED requires Joel to prove that GotNews' conduct would make the ordinary person exclaim, "Outrageous!" *See Villareal v. Buckle, Inc.*, No. 15-14382, 2017 WL 4310148, at *7 (E.D. Mich. Sept. 28, 2017). The parties' have not extensively briefed these two torts. (ECF No. 50, PageID.956–959; ECF No. 58, PageID.1178–1180; ECF No. 58, PageID.1286–1287.) More importantly, given the Court's ruling on defamation, this case will proceed to discovery. And discovery on the defamation claim will substantially overlap with discovery on the false light and IIED claims. So there is little to gain in reaching the merits of Joel's false-light and IIED claims right now. The Court instead elects to address these claims on more-developed briefing and a more-developed record.

## III.

For the reasons stated, GotNews' motion pursuant to Rule 56 and California's anti-SLAPP statute is DENIED. It is denied with prejudice insofar as GotNews seeks summary judgment on Joel Vangheluwe's claim that GotNews' article defamed him. It is denied without prejudice insofar as GotNews seeks summary judgment on Joel Vangheluwe's claim that GotNews placed him in a false light and intentionally inflicted emotional distress. While portions of GotNews' motion were

frivolous, the Court cannot say that the motion as a whole was frivolous and solely for the purposes of delay. So neither side is entitled to fees or costs associated with the motion.

SO ORDERED.

>s/Laurie J. Michelson
>LAURIE J. MICHELSON
>UNITED STATES DISTRICT JUDGE

Date: February 6, 2019

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 6, 2019.

>s/William Barkholz
>Case Manager to
>Honorable Laurie J. Michelson